## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DARRELL W. BRUCE,** | ) | **CASE NO. 1:10CV2894** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE JAMES S. GWIN** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **ROBERT WELCH, WARDEN,** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT & RECOMMENDATION** |

Petitioner, Darrell W. Bruce ("Bruce"), challenges the constitutionality of his conviction

in the case of *State v. Bruce*, Cuyahoga County Court of Common Pleas Case No. CR503337.

Bruce, represented by counsel, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1)

pursuant to 28 U.S.C. § 2254 on December 22, 2010.[1]  On March 29, 2011, Warden Robert

Welch ("Respondent") filed a Motion to Dismiss.  (Doc. No. 8.)  On November 2, 2011, the

Court issued a Report and Recommendation denying the motion, which was recently adopted.

(Doc. Nos. 11 & 14.)  On December 2, 2011, the Warden filed his Answer/Return of Writ.  (Doc.

No. 12.)  Bruce filed a Traverse on December 31, 2011.  (Doc. No. 13.)  For reasons set forth in

detail below, it is recommended that Bruce's Petition be denied.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct."

28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Bruce's conviction as follows:

> {¶ 3} During the trial, the state proved that Bruce, an admitted sex offender, raped
> the nine-and seven-year-old daughters of his then wife E.B.[FN2]  He raped them

---

[1]Bruce was represented by the same counsel, from his first trial through the instant
Petition.

separately over a period of four years according to their respective testimony. One victim, N.W., was fourteen years old at the time of trial and nine years old when the rapes began. She testified that shortly after her mother began dating Bruce in 2001, she and her sister D.W., 13 years old at the time of trial, would stay at Bruce's house after school, until their mother came to pick them up after work. D.W. was 7 years old at the time.

> FN2. Throughout this opinion, we will refer to the victims' mother and the victims by their initials to protect the identity of the children.

{¶ 4} Bruce would rape N.W. approximately two out of five school days. The incidents generally occurred when D.W. was taking a nap or was in the front room. Bruce continued to rape N.W. after they began living with him, and continued after his marriage to her mother.

{¶ 5} N.W. further testified that the rapes occurred at every place the family resided. N.W. always resisted, but Bruce would eventually overpower her because of his size. When the rapes began, N.W. told her mother that Bruce was "pulling" on her, but the rapes continued. Later, she told a friend at school, and eventually a police officer came to her school and asked her about the rapes, but she denied the incidents. N.W. was afraid to disclose the rapes because she did not want others to know, and because Bruce was a minister, she feared no one would believe her.

{¶ 6} In 2007, after Bruce was no longer living with the family, N.W. and her mother were at Golden Corral restaurant when she decided to talk about the rapes. N.W. told her mother that Bruce had been molesting and raping her for a number of years.

{¶ 7} D.W. testified that at first, Bruce began touching her on her buttocks. D.W. was unaware this was inappropriate behavior. Later, when her mother and sister were away, Bruce would rape her. Bruce would rape her on an ongoing basis at each place where the family resided.

{¶ 8} At trial, D.W. related several instances of rape, including one occasion when Bruce instructed her to take off her clothes as if she was going to take a shower. D.W. proceeded to the bathroom, took off her clothes and was about to enter the shower, when Bruce summoned her to his room. On that day, he raped her.

{¶ 9} D.W. told her mother that Bruce was touching her inappropriately, and her mother indicated that she would deal with it. The incidents would stop for a short while and then resume. Bruce continued to rape D.W. until he moved out of the family residence.

{¶ 10} It was after Bruce moved out that D.W. and N.W. disclosed more about the incidents to their mother. D.W. had not previously disclosed the attacks because Bruce had instructed her not to tell her mother.

{¶ 11} The mother, E.B., testified that she was divorced from her daughters' father and living with her father when she met Bruce in May 2001. E.B. testified about the dating and courtship following their meeting. A few months after their meeting, Bruce disclosed to E.B. that he had been previously convicted of sexually assaulting his biological daughter, that he had been imprisoned, and had been labeled a sexual offender. E.B. said Bruce assured her that the incident with

2

his daughter occurred once in a moment of weakness as result of drug abuse.

{¶ 12} E.B. subsequently introduced Bruce to her daughters and later allowed him to pick up the children from school and keep them at his apartment until she finished work. One day in June 2002, E.B. arrived unexpectedly early at his apartment. When she entered the apartment, she discovered Bruce on the living room couch with D.W. laying on top of him. D.W. was unclothed below her waist and her underpants were lying on the floor.

{¶ 13} E.B. testified as follows about the ensuing events:

"Q. What did you do when you saw that scene?

A. * * * I sent her out of the room. I began to fuss at Mr. Bruce, he started-what I call suicidal in the sense that he went to the kitchen and got a knife and gave it to me. He said, 'You can kill me. I'm sorry.' I was telling him that it's over, just forget everything. He was like, 'Don't tell my mom. If you tell her, that will kill her. I am so sorry.' And went through that." [FN3]

      FN3. Tr. 125B.

{¶ 14} After this incident, E.B. decided to end the relationship, but Bruce was remorseful and persistent, which led her to stay in the relationship. Subsequently, in March 2003, E.B. married Bruce. She later gave birth to their son, D.B. They changed residences many times during which the relationship soured. They separated in 2005.

{¶ 15} After Bruce left the family residence, E.B.'s daughters disclosed that Bruce had been sexually assaulting them. Her daughters did not disclose the extent or details of the assaults, but indicated that they were ready to get help in addressing the situation. E.B. was conflicted about how to proceed because the family was active in the community and Bruce was a church minister, but she eventually sought help for the children and reported it to the authorities.

{¶ 16} At trial, Bruce's biological daughter, D.J.D., age 28, testified that she lived with Bruce from birth until age two, when her biological mother died giving birth. D.J.D. later lived with Bruce in New York and Ohio from age 5 until age 10. D.J.D. testified that Bruce began raping her when she was about six years old and continued to rape her repeatedly for the next four years.

{¶ 17} D.J.D. stated Bruce would rape her while her stepmother was at work. He would awaken her at night and rape her while her younger brother was sleeping. D.J.D. always resisted, to no avail. D.J.D. testified about one incident as follows:

"We lived in Aurora, and we had a split-level house in Aurora, and one time he raped me in the family room. It wasn't in the basement part because there was another family room. It was in the living room/family room area. It was early in the morning before he went to work because he was a garbage man for the city, and he had one of those zip-up-you know, the zip-up suits they wear. He took it off a little bit so he could, you know, so he could-I was going upstairs to tell. He stopped me when I was going up the stairs and he was on his knees. He said, 'I'll go to jail.' I didn't want him to go to jail. He was my dad. It was my dad. I didn't want him to."[FN4]

      FN4. Tr. 1393.

3

{¶ 18} D.J.D. eventually told the pastor of the church about the ongoing rapes. Criminal charges were brought against Bruce, who ultimately served a ten-year prison term following a plea agreement with the state.

*State v. Bruce*, 2009 WL 4170493, *1-3, 2009-Ohio-6214 (Ohio App. 8th Dist., Nov. 25, 2009).

## II. Procedural History

### A.    Conviction

On November 15, 2007, a Cuyahoga County Grand Jury charged Bruce with three counts of rape by force of a child under thirteen in violation of Ohio Revised Code ("O.R.C." §2907.02(A)(1)(b), three counts of gross sexual imposition with a child under thirteen in violation of O.R.C. § 2907.05(A)(4), and one count of failure to provide notice of change of address in violation of O.R.C. § 2950.05(E)(1).  (Doc. Nos. 8-4 to 8-10; Exhs. 1-7.)  Sexually violent predator specifications were attached to each of the rape and gross sexual imposition counts.  *Id.*

On March 20, 2008, the first trial commenced.  That jury was unable to reach a unanimous verdict.  (Doc. No. 8-16; Exh. 13.)  On July 31, 2008, a second jury found Bruce guilty of all counts and specifications, except the rape charged under count three.  (Doc. No. 8-17; Exh. 14.) On August 5, 2008, Bruce was sentenced to consecutive terms of life without parole for the rape convictions in counts one and two; two years to life for the gross sexual imposition offenses in counts four, five and six; and five years on count seven, the failure to notify offense.  (Doc. No. 8-18; Exh. 15.)

### B.  Direct Appeal

On August 29, 2008, Bruce, through counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising twenty-three assignments of error:

> 1.    Defendant was denied due process of law and equal protection of the law when the court refused to grant defendant's request for a transcript of his prior trial.
>
> 2.    Defendant was denied due process of law and a fair trial when the court permitted the prosecutor, during direct examination of [N.W. and D.W.], to play their recorded interviews with a social worker.

4

3.    Defendant was denied due process of law when the court ruled that his wife, [E.B.], could testify over defendant's objection.

4.    Defendant was denied due process of law when the court overruled defendant's motion to suppress concerning a recorded phone conversation made by [E.B.] at the request of a deputy sheriff.

5.    Defendant was denied due process of law and a fair trial when the court refused to bifurcate a specification charging defendant as a sexual violent predator.

6.    Defendant was denied due process of law when the court overruled his motion to dismiss various counts of the indictment.

7.    Defendant was denied a fair trial when the court allowed Devan Demery to testify concerning other bad acts.

8.    Defendant was denied due process of law when the court refused to grant a continuance when the prosecutor amended discovery during the course of the trial.

9.    Defendant was denied a fair trial by reason of cumulative errors committed during the course of the trial.

10.   Defendant was denied due process of law and a fair trial when the witnesses were allowed to testify as to the truth and veracity of the claims made against defendant and defendant's guilt.

11.   Defendant was denied a fair trial by reason of improper prosecutorial argument.

12.   Defendant was denied due process of law when he was convicted of offenses which required no culpable mental state.

13.   Defendant was denied due process of law when he was convicted of a sexually violent predatory specification which specification failed to allege any of the elements of the specification.

14.   Defendant was denied due process of law when the court failed to give a proper curative instruction concerning other acts evidence.

15.   Defendant was denied due process of law when the court improperly answered a question concerning elements of failure to register.

16.   Defendant was denied due process of law when the court failed to instruct fully as to the statutory definition of a sexually violent predator.

17.   Defendant was denied due process of law and a fair trial when the court failed to include the entirety of its jury instructions.

18.   Defendant was denied due process of law when the court amended the venue statute and indictment by instructing the jury it could convict for offenses committed in other than Cuyahoga County.

19.     Defendant was denied due process of law when the court would not require the jury to determine the date and location of the offenses.

20.     Defendant was denied due process of law when he was convicted and sentenced as a sexually violent predator.

21.     Defendant was denied due process of law when he was sentenced to five (5) years for a felony of the third degree for failure to register.

22.     Defendant was denied due process of law when the court overruled defendant's motion for judgment of acquittal.

23.     Defendant was denied his Sixth Amendment rights when the court sentenced defendant to consecutive terms of imprisonment on all offenses based on judicial factfinding.

(Doc. Nos. 8-19, 8-21; Exhs. 16 and 17.)  On November 25, 2009, the state appellate court affirmed in part and reversed in part, remanding "with instructions to the trial court to amend its journal entry to find Bruce not guilty of the sexually violent predator specifications attendant to Counts 1 through 6." (Doc. No. 8-26; Exh. 23.)

On December 8, 2009, Bruce filed an application for reconsideration requesting among other things, a remand for resentencing because the convictions for the sexually violent predator specifications were reversed.  (Exh. 24.)  The State opposed the application, but agreed that resentencing was necessary.  (Exh. 25.)  On January 27, 2010, the court denied reconsideration. (Exh. 26.)

On December 7, 2009, Bruce filed a motion for consideration *en banc* which was denied on January 26, 2010.  (Exhs. 28 and 29.)  Bruce also filed a motion for certification of conflict, which was denied on January 27, 2010.  (Exhs. 31 and 32.)

On March 8, 2010, Bruce appealed to the Ohio Supreme Court raising twenty propositions of law:

1.      A Defendant has been denied due process of law and equal protection of the law when the court refuses to grant defendant's request for a transcript of his prior trial.

2.      A Defendant has been denied due process of law and a fair trial when the court permits the prosecutor, during direct examination of witnesses to play their *ex parte* recorded interviews with a social worker.

3.      A Defendant has been denied due process of law when the court allowed Defendant's wife to testify over Defendant's objection.

6

4.     A Defendant had been denied due process of law when the court allows a recorded phone conversation with Defendant made by his wife at the request of a deputy sheriff.

5.     A Defendant has been denied due process of law when the court refuses to dismiss various counts of the indictment which are duplicates of one another.

6.     A Defendant has been denied a fair trial when the court allows testimony concerning an alleged sexual encounter occurring seventeen years prior to the trial date.

7.     A Defendant has been denied a fair trial when the court refused to grant a continuance where the prosecutor produces a new witness in the middle of the trial.

8.     A Defendant has been denied a fair trial by reason of cumulative errors committed during the course of the trial.

9.     A Defendant had been denied due process of law and a fair trial when witnesses were allowed to testify to the truth and veracity of the claims made against defendant and his guilt.

10.    A Defendant has been denied a fair trial by reason of improper prosecutorial argument.

11.    A Defendant has been denied due process of law when he was convicted of offenses for which no culpable mental state was required.

12.    A Defendant has been denied due process of law when he is convicted of being a sexually violent predatory when none of the elements were alleged in the indictment.

13.    A Defendant has been denied a fair trial when the court fails to give a proper limiting instruction concerning other acts.

14.    A Defendant has been denied due process of law when the court improperly answers a question concerning elements of the failure to register.

15.    A Defendant has been denied due process of law when the court fails to fully instruct on the elements of a sexually violent predator specification.

16.    A Defendant has been denied due process of law when the court amends the venue statute and indictment allowing a conviction for an offense committed in other than Cuyahoga County.

17.    A Defendant has been denied due process of law when the court sentenced Defendant for a third degree felony for failure to register without a specific finding by the jury.

18.    Defendant has been denied due process of law when he is convicted of offenses where insufficient evidence has been presented.

7

19.    A Defendant has been denied his right under the Sixth Amendment when the court sentences Defendant to consecutive sentences based on judicial fact finding.

20.    When an appellate court has vacated a sexually violent predator specification a resentencing is required, not just a deletion of the conviction from the court's journal entry.

(Doc. Nos. 8-36, 8-37; Exhs. 33 and 34.)  On May 26, 2010, the appeal was dismissed as not involving any substantial constitutional question.  (Doc. No. 8-39, Exh. 36.)

**C.  Corrected Entry and Resentencing**

While Bruce's appeal was pending in the Ohio Supreme Court, on April 6, 2010, the trial court resentenced him to life imprisonment on counts one and two and to consecutive terms of five years on the remaining counts.[2]  (Doc. No. 8-40, Exh. 37.)  The journal entry notes that all sexually violent predator specifications were deleted.  *Id.*

On May 5, 2010, Bruce, through counsel, appealed to the state appellate court raising four assignments of error:

1.    Defendant was denied due process of law when the court resentenced defendant while an appeal was pending in the Ohio Supreme Court.

2.    Defendant was denied due process of law when the court increased his sentence for gross sexual imposition at sentencing.

3.    Defendant was denied due process of law when he was sentenced on count seven as a felony of the third degree when there was no separate finding by the jury as to the degree of the offense of gross sexual imposition.

4.    Defendant was denied due process of law when the court arbitrarily imposed consecutive sentences without stating any reasoning.

(Doc. Nos. 8-41, 42; Exhs. 38 and 39.)  On November 20, 2010, the state appellate court *sua sponte* remanded to the trial court with directions to include the means of conviction for each count in the resentencing journal entry.  (Doc. No. 8-44; Exh. 41.)  On December 23, 2010, the trial court issued a new judgment entry, including the means of conviction and imposing the same sentence as specified in the April 6, 2010, journal entry.  (Doc. No. 8-45; Exh. 42.)

_____

[2]The journal entry actually states Bruce was sentenced for a "term of life on counts 1 and 2, 5 years on counts 4, 5, 6 and 7. 5 years on each count is consecutive."  (Doc. No. 8-40; Exh. 37.)

### D.  Motion for Reconsideration

On March 28, 2011, Bruce filed a motion for reconsideration with the state appellate court challenging the level of his sentence for failure to register.  (Doc. No. 10 at 2.)  The court denied the motion on May 6, 2011.  *See* Docket Information, http://cpdocket.cp.cuyahogacounty.us.) He appealed to the Ohio Supreme Court, which dismissed the case as not involving any substantial constitutional question.  *Id.*

### E.  Federal Habeas Petition

On December 22, 2010, Bruce filed a Petition for Writ of Habeas Corpus asserting fifteen grounds for relief:

> **Ground One: Fourteenth Amendment**
> **Supporting Facts**: Petitioner was tried in these charges and the jury was unable to agree on a verdict and mistrial was declare [sic].  Petitioner, before a second trial requested a transcript of the witnesses from the trial to prepare a defense for his second trial.  This was denied.
>
> **Ground Two: Sixth and Fourteenth Amendment**
> **Supporting Facts**: Petitioner was denied due process of law and a fair trial when the court permitted the prosecutor, during the direct examination of witnesses against petitioner to play their *ex parte* recorded interviews with a social worker.
>
> **Ground Three: Sixth and Fourteenth Amendment**
> **Supporting Facts**: Petitioner was denied due process of law and a fair trial when the court allowed petitioner's wife to testify over the objection of petitioner.
>
> **Ground Four: Sixth and Fourteenth Amendment**
> **Supporting Facts**: Petitioner was denied due process of law when the court allowed recorded phone conversation with petitioner made by his wife at the special instance and request of a deputy sheriff to be used at trial.
>
> **Ground Five: Fifth, Sixth and Fourteenth Amendment**
> **Supporting Facts**: Petitioner was denied due process of law when the court refused to dismiss counts of the indictment which were duplicates of one another which denied petitioner's right to know the nature of the offense and to defend.
>
> **Ground Six: Fourteenth Amendment**
> **Supporting Facts**: Petitioner was denied a fair trial when the court permitted testimony concerning an alleged sexual encounter occurring seventeen (17) [sic] prior to the trial date.
>
> **Ground Seven: Fourteenth Amendment**
> **Supporting Facts**: Petitioner was denied a fair trial when the court refused to grant a continuance where the prosecutor produced a new witness in the middle of the trial.
>
> **Ground Eight: Fourteenth Amendment**
> **Supporting Facts**: Petitioner was denied a fair trial by reason of the

9

accumulation of errors committed during the course of the trial.

**Ground Nine: Fourteenth Amendment**
**Supporting Facts**: Petitioner was denied a fair trial and due process of law when witnesses were permitted to testify to the truth and veracity of claims made against petitioner and express their opinion of his guilt.  In addition the prosecuting attorney made improper prosecutorial arguments which denied petitioner a fair trial.

**Ground Ten: Fifth, Sixth and Fourteenth Amendment**
**Supporting Facts**: Petitioner was denied due process of law when he was convicted of being a sexually violent predator when none of the elements of that claim were alleged in the indictment.

**Ground Eleven: Fourteen [sic] Amendment**
**Supporting Facts**: Petitioner was denied a fair trial when the court failed to give a proper limited instruction concerning other bad acts as offered by the prosecution.

**Ground Twelve: Fourteenth Amendment**
**Supporting Facts**: Petitioner was denied due process of law when the court improperly answered a question from the jury concerning the elements of the offense of failure to register.

**Ground Thirteen: Sixth and Fourteenth Amendment**
**Supporting Facts**: Petitioner was denied due process of law when the court amended the Ohio Venue Statute and indictment which permitted a conviction for offenses alleged to have been committed in counties other than Cuyahoga County.

**Ground Fourteen: Fourteenth Amendment**
**Supporting Facts**: Petitioner was denied due process of law when the court sentenced petitioner for a third degree felony for failure to register where the jury did [not] make a specific finding elevating this offense from a fourth degree to a third degree felony.

**Ground Fifteen: Fourteenth Amendment**
**Supporting Facts**: Petitioner was denied due process of law when he was convicted of offenses for which there was insufficient evidence to permit a rational factfinder to return a verdict of guilty.

(Doc. No. 1.)

### III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable

10

>application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

"[C]learly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412, 120 S.Ct. 1495.  The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them.  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d

11

263 (2002) (*per curiam*).  Instead, it is sufficient that the result and reasoning are consistent with Supreme Court precedent.  *Id*.

When "the state court decision does not squarely address the federal constitutional issue in question, but its analysis bears 'some similarity' to the requisite constitutional analysis," *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006); *see also Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006); *Maldonado v. Wilson*, 416 F.3d 470, 475-76 (6th Cir. 2005), *cert. denied*, 546 U.S. 1101, 126 S.Ct. 1038, 163 L.Ed.2d 874 (2006), federal habeas courts apply a modified form of AEDPA review.  The modified AEDPA standard of review developed in the Sixth Circuit requires courts "to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing unless the state court's decision is contrary to or an unreasonable application of federal law."  *Maldonado*, 416 F.3d at 476; *see also Harris*, 212 F.3d at 943 (characterizing the modified AEDPA standard as requiring us "to conduct an independent review of the record and applicable law").

## IV.  Analysis

### A. Ground One: Failure to Provide Transcript

Bruce contends that he was denied equal protection and due process when the court did not provide him with the transcript from his first trial for use during his second.  (Doc. No. 13 at 8-9.)  Respondent argues that because Bruce was not indigent, the appellate court's decision was reasonable.  (Doc. No. 12 at 20.)

"Equal protection dictates that the state must provide indigent criminal defendants '* * * with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal.'"  *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971).  See, also, *Mayer v. Chicago*, 404 U.S. 187, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); *Draper v. Washington,* 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); *State v. Arrington,* 42 Ohio St.2d 114, 326 N.E.2d 667 (1975).

*Britt v. North Carolina*, 404 U.S., at 227, 92 S.Ct., at 434 identifies two factors which must be considered in determining whether an indigent criminal defendant needs a transcript for an effective defense or appeal:

12

> * * * (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.

*State ex rel. Seigler v. Rone,* 42 Ohio St.2d 361, 361-362, 328 N.E.2d 811, 812 (1975).

The state appellate court concluded that Bruce was not entitled to a transcript at the state's expense because he was not indigent, as follows:

> {¶ 22} The law is clear that the state must provide an indigent defendant with a transcript of a prior proceeding when it is needed for an effective defense or appeal.[FN5]
>
> FN5. *State v. Walton*, Cuyahoga App. No. 90140, 2008-Ohio-3550, *citing State v. Arrington* (1975), 42 Ohio St.2d 114, 326 N.E.2d 667, at paragraph one of the syllabus.
>
> {¶ 23} In this instance, however, Bruce was not entitled to a transcript at the state's expense because he has failed to establish his indigency for purposes of obtaining the transcript.[FN6] The record indicates that on April 21, 2008, the trial court conducted a hearing for purposes of determining indigency in order to decide whether to provide a transcript at the state's expense. The hearing revealed that Bruce had received approximately $92,192.69 immediately prior to his incarceration on the instant charges. When given an opportunity to explain if said funds were depleted, Bruce was not forthcoming. In denying his request, the trial court stated in pertinent part as follows:
>
> FN6. *Id.*
>
> " * * * Your client has sizeable income. Your client is not indigent. As I indicated to you previously, certainly if you wanted a transcript of the proceedings, you were entitled to it. You simply had to pay for it. Now, he has been incarcerated so, therefore, he has no other reason to use any of the monies that he has received other than to obtain this transcript if he wanted it. Certainly if he wants a transcript, he is entitled to it. But he is not entitled to indigent qualifications."[FN7]
>
> FN7. Tr. 1382-1383.
>
> {¶ 24} Moreover, the record indicates that Bruce retained his own counsel to represent him in the first trial and the same counsel was representing him in the second trial. Thus, Bruce was not entitled to a transcript at the state's expense because he was not indigent. Accordingly, we overrule the first assigned error.

*Bruce*, 2009 WL 4170493, *3-4, 2009-Ohio-6214 (¶¶ 22-24.)

As Bruce did not establish his indigency, the appellate court properly found he was not entitled to a free transcript. (Doc. No. 12-8, 28-37; Tr. 894-896.) The trial court also noted that if the State referenced the first trial transcript, Bruce would receive the relevant portion. (Doc. No. 12-10 at 94-96; Tr. 1382-1384.) The state appellate court's decision was not contrary to, nor an unreasonable application of federal law.

13

**B.  Ground Two: Confrontation Clause**

Bruce argues that he was denied a fair trial when, during the direct examination of social worker, Amy Houk, the prosecutor played recorded interviews of N.W. and D.W.[3]  (Doc. No. 13 at 9-12.)  He contends that he was denied the right to confront and cross-examine the children while the tapes were being played.  *Id*. at 9-10.  He also asserts that the interviews should only have been allowed to rebut a claim of recent fabrication.  *Id*. at 10.

The Confrontation Clause of the Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  This guarantee applies to both federal and state prosecutions.  *See Pointer v. Texas*, 380 U.S. 400, 406 (1965).  The Confrontation Clause bars the admission of "testimonial statements" made by persons who have not testified as witnesses at trial.  *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004); *United States v. Cromer*, 389 F.3d 662, 671 (6th Cir. 2004).  "Only [testimonial] statements ... cause the declarant to be a 'witness' within the meaning of the Confrontation Clause [and] [i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."  *Davis v. Washington*, 547 U.S. 813, 821 (2006).  The Confrontation Clause does not bar admission of out of court statements as long as the declarant is available for cross-examination.  *Crawford*, 541 U.S. at 59.

The state appellate court properly found that the Confrontation Clause was not implicated since both N.W. and D.W., as well as Stacey Spicer, the intake caseworker who witnessed the interviews, all testified and were subject to cross-examination at trial.  *Bruce*, 2009 WL 4170493, *4 (¶¶ 25-28) (Ohio App. 8th Dist. Nov. 25, 2009).  The state appellate decision was neither contrary to, nor an unreasonable application of clearly established Supreme Court

---

[3]Amy Houk and Stacey Spicer were both intake case workers at the Nord Counseling Center in Lorain County.  (Tr. 1345, 1356.)  (The transcript consistently referred to it as the "North" Center.)  Spicer (a male) was assigned the case, but Houk conducted the interviews as the girls were more comfortable speaking with a female case worker.  (Tr. 1349.)  Stacey, however, viewed the interview from outside the room.  (Tr. 1358.)

14

precedent.

### C.  Ground Three: Spousal Competency Rule

Bruce asserts that he was denied due process when the trial court allowed E.B., his spouse and the mother of N.W and D.W., to testify over his objection.[4]  (Doc. No. 13 at 12-13.)  He contends that E.B. was an incompetent witness since Ohio's statute required his consent before she could testify.  *Id.*

Bruce bases his assertion that his wife was incompetent to testify against him upon O.R.C. § 2945.42, which provides, in relevant part, that spouses may testify "in behalf of each other in all criminal prosecutions and [ ... ] against each other in all actions, prosecutions, and proceedings for personal injury of either by the other, bigamy, or failure to provide for, neglect of, or cruelty to their children under eighteen years of age or their physically or mentally handicapped child under twenty-one years of age."

Every person is competent to be a witness except:

* * *

(B) A spouse testifying against the other spouse charged with crimes except crimes against the testifying spouse or the children of either. * * *

Evid. R. 601(B) extends a spouse's competency further than O.R.C. § 2945.42 as it allows a spouse to testify when the other spouse commits a crime against the children of either, as opposed to crimes committed against their children.  O.R.C. § 2945.42 also indicates that the rule applies even if the marital relation ceases to exist.

The state appellate court, applying state law, determined:

{¶ 29} In the third assigned error, Bruce argues the court erred by allowing his wife, E.B., to testify without his consent; however, in support of this argument, he cites a portion of R.C. 2945.42, which was superseded by Ohio Evid.R. 601(B).

{¶ 30} In *Akron v. Hockman,*[FN9] the court noted "that the portion of R.C. 2945.42 relating to spousal competence has been superseded by Evid.R. 601 since its inception in 1980. *State v. Mowery* (1982), 1 Ohio St.3d 192, 194, 899, 438 N.E.2d 897. Evid.R. 601 provides that '[e]very person is competent to be a witness except: * * * A spouse testifying against the other spouse charged with a crime except when * * * a crime against the testifying spouse or a child of either spouse is charged[.]' " [FN10]

---

[4]At the time of the trial, they were separated, but still married.  (Doc. No. 12-9 at 146.)

FN9. (2001), 144 Ohio App.3d 262, 759 N.E.2d 1286.

FN10. *Id.*; Evid.R. 601(B)(1).

{¶ 31} Since the alleged crimes were committed against E.B.'s children and E.B. elected to testify, her testimony does not violate Evid.R. 601(B). Accordingly, we overrule the third assigned error.

*Bruce*, 2009 WL 4170493, 2009-Ohio-6214, at *4-5 (¶¶ 29-31).

Whether the Ohio marital communication privilege is applicable in a state criminal proceeding is a state law matter and is not a cognizable habeas corpus claim. Several courts have held that admission of evidence covered by the marital privilege can never rise to the level of a due process violation and, therefore, cannot form the basis of habeas relief. *Sandoval v. Toledo Corr. Inst.*, 2007 WL 2071908, *4 (N.D. Ohio Jul. 16, 2007); *see also Simpson v. Neal*, 986 F.2d 1424, 1993 WL 47204 (7th Cir. Feb. 24, 1993) (considering purposes of marital privilege and finding that "[c]learly, recognition of the marital privilege is not necessary to afford due process."); *Byrd v. Armontrout*, 880 F.2d 1, *9–10 (8th Cir. 1989) (explaining that misapplication of the marital privilege does not establish a due process violation because "[t]he policies furthered by proper application of the marital privilege in any of its forms are quite distinct from the concerns for fairness and reliability protected by the Due Process Clause."); *Mitchell v. Renico*, 2006 WL 3446565, *9 (W.D. Mich. Nov. 28, 2006) (*quoting Simpson* and holding that, "even if the trial court erred by admitting evidence concerning confidential marital communications, this furnishes [the petitioner] with no basis for federal habeas relief.").

The state appellate court's decision was neither contrary to, nor an unreasonable application of federal law. It appropriately applied Ohio law, upholding the trial court's ruling that E.B. was competent to testify because N.W. and D.W. were her daughters. Bruce is not entitled to relief on this claim.

### D. Ground Four: Recorded Phone Conversation

Bruce contends that he was denied due process when the court failed to suppress a recorded phone conversation with his wife, made at the request of the police department. (Doc. No. 13 at 13-15.) Specifically, Bruce argues that E.B. was acting as an agent of law enforcement and

16

should have identified herself as such, before eliciting adverse statements from him.  (Doc. No. 13 at 13-14.)  Relying on state law, Bruce also argues that the phone call was used to obtain evidence by deception and trickery.  (Doc. No. 13 at 13.)  Furthermore, he asserts that O.R.C. § 2933.52(A) prohibits the interception of wire communications.  (Doc. No. 13 at 14.)

Neither the United States Constitution nor any federal statute prohibits law enforcement officials from recording or listening to phone conversations so long as one of the parties to the conversation has consented.  *See, e.g., United States v. White*, 401 U.S. 745, 752-53, 91 S.Ct. 1122, 1126-27, 28 L.Ed.2d 453 (1971) (plurality opinion); *United States v. Peete*, 919 F.2d 1168, 1177 (6th Cir. 1990); *United States v. Moreno*, 2007 WL 1933343, at *3 (S.D. Ohio Mar. 22, 2007).

Ohio law provides:

(A) No person purposely shall do any of the following:

(1) Intercept, attempt to intercept, or procure another person to intercept or attempt to intercept a wire, oral, or electronic communication;

(2) Use, attempt to use, or procure another person to use or attempt to use an interception device to intercept a wire, oral, or electronic communication, if either of the following applies:

(a) The interception device is affixed to, or otherwise transmits a signal through, a wire, cable, satellite, microwave, or other similar method of connection used in wire communications;

(b) The interception device transmits communications by radio, or interferes with the transmission of communications by radio.

(3) Use, or attempt to use, the contents of a wire, oral, or electronic communication, knowing or having reason to know that the contents were obtained through the interception of a wire, oral, or electronic communication in violation of sections 2933.51 to 2933.66 of the Revised Code.

(B) This section does not apply to any of the following:

* * *

(3) A law enforcement officer who intercepts a wire, oral, or electronic communication, if the officer is a party to the communication or if one of the parties to the communication has given prior consent to the interception by the officer;.

* * *

O.R.C. § 2933.52(A) & (B).

17

The state appellate court, relying on O.R.C. § 2933.52(B)(3) found that the telephone conversation was properly admitted because E.B., a party to the conversation, consented to the recording. *Bruce*, 2009-Ohio-6214, at ¶¶ 32-35.  Moreover, the appellate court noted that such consent was conceded by Bruce's counsel. *Id*. at ¶ 34.

Furthermore, the "right of privacy" may be interpreted as alleging a violation of the Fourth Amendment.  The Fourth Amendment to the Constitution is a limitation on the police powers of the states, protecting against unreasonable searches and seizures.  "The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (*citing Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), however, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494.  In other words, a habeas petitioner may not seek to raise issues challenging the legality of a search and seizure, if he had a full and fair opportunity to raise his claims in state court and if the presentation of the claims was not frustrated by any failure of the state's corrective processes. *Id*. at 494-95.

A review of the record indicates that Bruce was given a chance to fully and fairly litigate this Fourth Amendment claim in the Ohio courts.  He first raised the issue in a motion to suppress prior to the first trial.  (Doc. No. 8-14, Exh. 11.)   At the second trial, the court incorporated all of the rulings from the first.  (Tr. 899, Doc. No. 12-8 at 41.)  Therefore, under the *Stone* doctrine, this issue cannot be reviewed in federal habeas.  Furthermore, the decision of the state court was neither contrary to, nor an unreasonable application of federal law.

### E.  Ground Five: Duplicative Counts

Bruce claims he was denied due process and a fair trial when the trial court refused to dismiss duplicative and vague counts of the indictment, thereby denying him the right to notice

18

of the charges against him.  (Doc. No. 13 at 15-16.)

Respondent contends that Bruce only indirectly raised this claim on appeal, instead focusing on the broad timeframes of the rape and gross sexual imposition counts as objectionable.  (Doc. No. 12 at 25; Ex. 17, pp. 19-20.)  Respondent asserts that the indictment gave Bruce fair notice.  *Id*. at 28.

"[T]he Constitution does not require any particular state indictment rule ... [or] an indictment at all if sufficient notice of the charges is given in some other manner."  *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (*citing Combs v. Tennessee*, 530 F.2d 695 (6th Cir.) cert. denied, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976)).  Nevertheless, the Due Process Clause of the Fourteenth Amendment requires that a state must give a criminal defendant "fair notice" of the charges against him to permit adequate preparation of his defense. *See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006); *Koontz*, 731 F.2d at 369; *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977).  The fair notice requirement is met when a charged offense "[is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged."  *Id*.  "To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts."  *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992).  The United States Supreme Court has held as follows:

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."  "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."  *United States v. Hess*, 124 U.S. 483, 487, 8 S.Ct. 571, 31 L.Ed. 516 (1888).

*Hamling v. United States*, 418 U.S. 87, 117-118, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *accord United States v. McAulife*, 490 F.3d 526, 530 (6th Cir. 2007); *United States v. Jackson*, 327 F.3d 273, 290 (4th Cir. 2003).  Moreover, the law is clear that "[b]eyond notice, a claimed deficiency

in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (*citing Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)) ("The indictment here had sufficient information to provide petitioner with adequate notice and the opportunity to defend and protect himself against future prosecution for the same offense. Any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding.")

The Sixth Circuit has held that the lack of specific dates in indictments involving sexual abuse does not pose a constitutional problem:

> This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements. *See Isaac v. Grider*, 2000 WL 571959 at *5 (four months); *Madden v. Tate*, 1987 WL 44909, at *1-*3 (6th Cir.1987) (six months); *see also Fawcett v. Bablitch*, 962 F.2d 617, 618-19 (7th Cir.1992) (six months); *Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir.1990) (three years); *Parks v. Hargett*, 1999 WL 157431, at *4 (10th Cir.1999) (seventeen months). Certainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved. The Ohio Court of Appeals found that there was no evidence the state had more specific information regarding the time period of the abuse. Valentine's claims regarding the lack of time- and date-specific counts therefore fail.

*Valentine v. Konteh,* 395 F.3d 626, 632 (6th Cir. 2005).

The *Valentine* Court found a violation of due process when multiple convictions for identical charges were left undifferentiated throughout the state court proceedings. *Valentine*, 395 F.3d at 636. Nonetheless, the court sustained the conviction on a count of child rape and a count of felonious sexual penetration, as there was sufficient testimony to support one instance of each. *Id*. at 628. It held that any constitutional error was harmless with respect to single convictions. *Id*. at 637. Moreover, the Court ruled that Valentine could not be subsequently charged with the same crimes against the victim during the same period. *Id*. at 628.

In the instant matter, the state appellate court found that Bruce had ample information regarding dates to adequately prepare a defense:

> {¶ 37} Initially, we note the indictment recited the language for the definition of rape and gross sexual imposition as defined in the relevant statutes; therefore, the indictment properly apprised Bruce of the charged offenses.[FN11] We conclude the indictment was not invalid for failure to state the exact date that the offenses were committed. Specificity as to the time and date of an offense is not required in an indictment.[FN12]

20

FN11. *State v. Murphy* (1992), 65 Ohio St.3d 554, 583, 605 N.E.2d 884; *State v. Landrum (1990)*, 53 Ohio St.3d 107, 119, 559 N.E.2d 710; Crim.R. 7(B).

FN12. *State v. Shafer*, Cuyahoga App. No. 79758, 2002-Ohio-6632.

{¶ 38} Further, under R.C. 2941.03, "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *." Consequently, an indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly.[FN13] The state's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged.[FN14]

FN13. *State v. Bogan*, Cuyahoga App. No. 84468, 2005-Ohio-3412.

FN14. *Id.*

{¶ 39} Here, both victims were under ten years of age when the rapes began. Both victims testified that Bruce raped them at each and every address where the parties resided. E.B. testified that she and her daughters lived with Bruce at two locations in Cuyahoga County and two locations in Lorain County. E.B. testified as to the dates that the parties resided at the respective addresses.

{¶ 40} Thus, Bruce had ample information regarding the date range of the offenses and could adequately prepare a defense. Accordingly, we overrule the sixth assigned error.

*Bruce*, 2009 WL 4170493, at *5-6, 2009-Ohio-6214 (¶¶ 37-40).

Bruce relies on *Olsen v. McFaul*, 843 F.2d 918, 931 (6th Cir. 1988) in which the court ruled that an indictment did not give fair notice of the charge when it merely repeated the statutory language.  In *Olsen*, the court found that the faulty indictment contributed to the inadequacy of Olsen's trial preparation.

Manifestly, Olsen's counsel never did understand the theft charges with enough "precision and certainty" to prepare a meaningful defense. His confusion was obvious, and he stressed it repeatedly to the court, objecting that he could not craft a defense to an indictment so vague and uninformative. The only information provided with respect to the theft, aside from the name of the municipality concerned, was the date of the alleged offense. However, the key dates in the indictment were changed twice, and finally left so indeterminate as to furnish no assistance whatsoever in determining what city property Olsen was charged with stealing and how the theft was thought to have been carried out.

*Olsen*, 843 F.2d at 931.  *Olsen*, however, is distinguishable.  Here, Bruce was fairly informed of the charges, and had sufficient information to adequately prepare a defense.  He was told of the nature of the conduct alleged, the time period within which it allegedly occurred, and who he was alleged to have harmed.  Further, through the course of discovery and the trial, he was

informed of the precise location of certain alleged conduct, and a more detailed specification of the time periods in which each count was alleged to have occurred.  Based upon this information Bruce was able to understand the charges that he faced, and was able to identify any defenses he may have had to rebut those charges.  In fact, Bruce's primary defense was his denial that any inappropriate conduct ever occurred with the children.  Nothing other than the nature of the conduct and the identity of the victim was required in order for him to fashion and assert this defense.  *See Lawwill v. Pineda*, 2011 U.S. Dist. Lexis 52419, *24-25 (N.D. Ohio May 16, 2011).

The state appellate court relied solely on state law in finding that the indictment and the bill of particulars were sufficient even though they did not identify the specific dates on which the offenses allegedly occurred.  The indictment charged Bruce with three counts of rape with a child under thirteen by force and three counts of gross sexual imposition.  The State introduced evidence of separate offenses for each count.  Bruce has not established that the precise date was material to his defense or interfered with his ability to defend himself.  He has not cited to any other information that he needed to adequately prepare his defense, nor has he indicated that the defense would have changed in any way had he been provided with additional distinguishing facts in the indictment or at trial.  Bruce cannot legitimately claim that he lacked adequate notice of the charges against him, or that he was rendered incapable of providing any available defense.  As such, despite the lack of the specific dates in the indictment, the trial process did not deprive Bruce of due process.

### F.  Ground Six and Ground Eleven:  Prior Bad Acts/Curative Jury Instruction

Bruce asserts in ground six that he was denied a fair trial when the court allowed testimony from his biological daughter, D.J.D., that Bruce sexually assaulted her seventeen years earlier.  (Doc. No. 13 at 16-18.)  In Ground Eleven, Bruce contends that the trial court did not give the proper limiting instruction under Ohio Evid. R. 404(B).  (Doc. No. 13 at 26-27.)

When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.  *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

Nonetheless, "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (*quoting Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (*quoting Montana v. Egelhoff*, 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996)).

Not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. *Middleton v. McNeill*, 541 U.S. 433, 437, 124 S.Ct. 1830 (2004). The question is "'whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (*quoting Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Boyde v. California*, 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) (*quoting Cupp,* 414 at 146-147, 94 S.Ct. 396). If the charge as a whole is ambiguous, the question is whether there is a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle, supra*, at 72, 112 S.Ct. 475 (*quoting Boyde, supra*, at 380, 110 S.Ct. 1190).

Errors in jury instructions are generally not cognizable in federal habeas corpus unless they deprive petitioner of a fundamentally fair trial. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see also Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *Thomas v. Arn*, 704 F.2d 865, 868-69 (6th Cir. 1983). A habeas petitioner challenging jury instructions must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. 147. An omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law. *Henderson*, 431 U.S. at 155.

The state appellate court found that the 404(B) evidence was properly admitted:

{¶ 53} In the seventh assigned error, Bruce argues the trial court erred in allowing his biological daughter, D.J.D. to testify about other bad acts. This error lacks merit.

23

{¶ 54} A trial court generally has broad discretion in admitting evidence. [FN18] That said, evidence of a criminal defendant's prior criminal acts is generally inadmissible.[FN19] R.C. 2945.59 identifies exceptions to this rule:

FN18. *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 473 N.E.2d 768.

FN19. *State v. Thompson* (1981), 66 Ohio St.2d 496, 497, 422 N.E.2d 855.

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

{¶ 55} Further, under Evid.R. 404(B),

"evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character as to criminal propensity. It may, however, be admissible * * * [to show] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[FN20]

FN20. *State v. Cochran*, 11 Dist. No.2006-G-2697, 2007-Ohio-345, *quoting State v. Noling,* 98 Ohio St.3d 44, 781 N.E.2d 88, 2002-Ohio-7044, at ¶ 44.

{¶ 56} The trial court allowed the testimony of D.J.D., Bruce's biological daughter, who testified that he had raped her repeatedly between ages six and ten. A review of the testimony of "other acts" evidence to which Bruce objects established a pattern, and was fully admissible under Evid.R. 404(B).

{¶ 57} The pattern that emerged from the testimony of D.J.D. and the present victims indicated that Bruce committed the acts against very young girls, who lacked the ability to comprehend the acts, the power to resist, and the emotional strength to tell their mothers or other authority figure.

{¶ 58} In addition, Bruce had a pattern of committing these rapes when the mothers were working, when other siblings were away from home, in another part of the home, or sleeping, and often at night. Further, Bruce committed his sexual assaults multiple times per week and for years at a time.

{¶ 59} A review of the complained-of testimony reveals that it is practically identical to the testimony of N.W. and D.W. We conclude that D.J.D.'s testimony was properly admitted to show the pattern in which Bruce inflicted the sexual assaults upon these victims.

*Bruce*, 2009 WL 4170493, at *7-8, 2009-Ohio-6214 (¶¶ 53-59).

Regarding the jury instruction on the other acts evidence, the state appellate court found that while defense counsel questioned the court about the instruction given, he did not actually object to the instruction:

{¶ 94} In the fourteenth assigned error, Bruce argues the trial court failed to give the

24

proper curative jury instruction regarding other acts evidence. This assigned error lacks merit.

{¶ 95} In the instant case, the following discussion took place regarding the jury instructions on the other acts evidence:

"The Court: * * * Counselors, are there any corrections, deletions, or objections to the instructions?

Mr. Mancino: Just one, your Honor.

The Court: I will see you at sidebar, please.

* * *

Mr. Mancino: Is there a better instruction on other acts?

The Court: That is it.

Mr. Mancino: That is the statute?

The Court: That is the statute.

Mr. Mancino: That is the rule?

The Court: Yes.

Mr. Mancino: I thought there was a better instruction.

The Court: Okay. Anything else?

Mr. Mancino: That's it."[FN47]

    FN47. Tr. 1592-1593.

{¶ 96} Here, defense counsel acknowledged that the trial court's jury instruction was according to the statute.

*Bruce*, 2009 WL 4170493, *13-14 (¶¶ 94-96) (Ohio App. 8th Dist. Nov. 25, 2009).

The trial court charged the jury as follows regarding 404(B) evidence:

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion subject to the following exceptions.  Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the general assembly are applicable.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Tr. 1590-1591.)

25

There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence through testimony about other bad acts.  In *Estelle*, the Supreme Court declined to hold that the admission of evidence about prior acts violated due process.  502 U.S. at 75.  The *Estelle* Court stated in a footnote that it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id*. at 75 n. 5.  Moreover, in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose was served.  *Id.* at 563-64, 87 S.Ct. 648.  The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority."  *Id*. at 564, 87 S.Ct. 648.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, see *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

Upon review of the record, the state appellate decision was not contrary to clearly established federal law.  On July 24, 2008, on the second day of trial, the prosecutor gave notice to defense counsel and the court of intent to introduce 404(B) evidence through Bruce's biological daughter, D.J.D.  (Tr. 1181.)  Defense counsel objected, indicating that he was entitled to notice prior to trial, and that the evidence the State intended to produce related to conduct occurring almost twenty years earlier.  (Tr. 1182.)  He requested a mistrial or a continuance to conduct an investigation.  *Id*.  The court granted the State's motion to use the 404(B) evidence because defense counsel had notice from the first trial, and the seventh charge of the indictment included an allegation of the prior act.  (Tr. 1183-1184.)  The State represented that, although they knew who the victim was, they had just been able to locate her.  (Tr. 1183.)  D.J.D. was called as a witness on July 28, 2008, giving counsel several days to prepare.  Counsel had a full and fair opportunity to challenge this evidence, cross-examine witnesses, and present rebuttal

evidence.

Furthermore, the trial court instructed the jury that it was to consider that evidence only for the purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absences of mistake or accident." (Tr. 1590-1591.)  The jury was specifically instructed that they were not to use it as proof that "he acted in conformity therewith."  *Id.* Courts presume that a jury follows such instruction, *see, e.g., Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).  Bruce has provided the Court with no evidence rebutting that presumption.

Regarding the curative jury instruction, the record fails to reflect that Bruce was denied a constitutionally fair trial due to the jury instruction given on other bad acts.  Although the 404(B) instruction did not specifically advise the jury as to the purpose of the evidence, they were informed that it was not to be used as character evidence or as proof that he acted in conformity therewith.  The limiting instruction might have been more specific, but it did not affect the outcome of the trial.  *See Middleton*, 541 U.S. at 437. (The question is whether there was a reasonable likelihood that the jury has applied the instruction in a way that violates the Constitution.)  Although Bruce questioned the trial court about the limiting instruction, he provided no alternative instruction, and in the end, seemed to acknowledge that the charge used was in accordance with the statute.  Bruce has not carried his burden with respect to this ground.

Neither the admission of the challenged evidence, nor the jury instruction "so infused the trial with unfairness as to deny due process of law."  *Estelle*, 502 U.S. at 75 (*quoting Lisenba v. California*, 314 U.S. 219, 228, 62 S.Ct. 280, 286 (1941)).

### G. Ground Seven: Failure to Grant a Continuance of Trial

Bruce asserts that because the court denied a trial continuance in order to allow an investigation regarding the 404(B) evidence, he was denied his right to assistance of counsel and his right to present a defense.  (Doc. No. 13 at 18-19.)

The United States Supreme Court has recognized that the right to offer the testimony of witnesses and compel their attendance is constitutionally protected.  *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967) (relying on the Sixth Amendment and

27

due process of law).  Failure to grant a continuance to enable a defendant to exercise that right is, under certain circumstances, a denial of due process.  *See Hicks v. Wainwright*, 633 F.2d 1146, 1148-49 (5th Cir. 1981).  The Court has recognized, in the context of a defendant's assertion of his Sixth Amendment right to counsel, that the constitutionality of a trial judge's refusal to grant a continuance depends on the circumstances of each particular case, evaluated in the light of the judge's traditional discretion to grant or deny such motions.  *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964); *see also Hicks*, 633 F.2d at 1148-49 (applying *Ungar* to the right to compulsory process).

The *Ungar* Court considered the matter under a due process analysis, noting:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence.... Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied....

*Id*. at 589, 84 S.Ct. at 849; *see also Linton v. Perini*, 656 F.2d 207, 210 (6th Cir. 1981).

For the denial of a continuance to amount to a constitutional violation, a defendant's request for delay must be justifiable and the court's insistence on expediency unreasonable and arbitrary.  *United States v. Moreno*, 933 F.2d 362, 371 (6th Cir.), *cert. denied*, 502 U.S. 895 (1991).

The Fifth Circuit has enumerated a list of factors reviewing courts should consider in determining whether an accused was deprived of his rights to compulsory and due process by the denial of a continuance:

> the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*Hicks*, 633 F.2d at 1149 (*quoting United States v. Uptain*, 531 F.2d 1281, 1287 (5th Cir. 1976) (footnotes omitted)); *see also Bennett v. Scroggy*, 793 F.2d 772, 774-775 (6th Cir. 1986); *Dickerson v. Alabama*, 667 F.2d 1364, 1370 (11th Cir. 1982).  The *Hicks* Court also stated,

28

"[w]hen a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process."  633 F.2d at 1148.

The state appellate court concluded that there was no abuse of discretion as follows:

{¶ 71} A trial court has broad discretion in deciding whether to grant a continuance of trial proceedings.[FN30 ]A reviewing court will not reverse the denial of a continuance absent an abuse of discretion.[FN31] Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[FN32] The Supreme Court of Ohio has explained this standard as follows:

FN30. *State v. Unger* (1981), 67 Ohio St.2d 65, 423 N.E.2d 1078, syllabus.

FN31. *Id.*

FN32. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

"An abuse of discretion involves far more than a difference in* * * opinion* * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such a determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." [FN33]

FN33. *Huffman v. Hair Surgeon, Inc*. (1985), 19 Ohio St.3d 83, 87, 482 N.E.2d 1248.

{¶ 72} The Ohio Supreme Court set forth a balancing test to determine whether a motion for continuance should be granted.[FN34] When evaluating a motion for continuance, a court should consider the length of delay; whether other continuances have been granted; the inconvenience to litigants, witnesses, opposing counsel, and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the moving party contributed to the circumstances that give rise to the request for a continuance; and any other relevant factors, depending on the unique facts of each case.[FN35]

FN34. *Unger, supra*.

FN35. *Id.*

{¶ 73} Here, the record indicates that on March 13, 2008, the state provided Bruce with a copy of his prior conviction from Portage County Common Pleas Court, which specifically related to the charge of failing to provide notice of a new address. Thus, Bruce had sufficient time to ascertain that the victim was his biological daughter. In addition, during the first trial, E.B. testified that Bruce told her that he was convicted of gross sexual imposition relating to his oldest daughter and that his daughter would routinely fend off his potential girlfriends.

29

{¶ 74} Further, the state indicated on July 24, 2008, that it intended to call Bruce's biological daughter as a witness and did not actually call her as a witness until July 28, 2008. Thus, defense counsel had four days to prepare for D.J.D.'s court appearance. Accordingly, we overrule the eighth assigned error.

*Bruce*, 2009 WL 4170493, at *10-11, 2009-Ohio-6214 (¶¶ 71-74).  Bruce had knowledge in March, 2008, more than three months before his second trial, about his prior conviction for gross sexual imposition against his biological daughter, D.J.D.  The state appellate court's decision was neither contrary to, nor an unreasonable application of federal law.

### H.  Ground Nine: Veracity of Victims and Prosecutorial Misconduct in Closing Argument

Bruce argues two unrelated issues in ground nine.  First, he contends that witnesses for the State were allowed to testify as to the veracity of other witnesses.[5]  (Doc. No. 13 at 24.)  He asserts that the testimony of Anita Moreno, the victims' therapist at the Nord Center, was improper.  *Id*.  Specifically, he objects to Moreno's statements as to the victims' honesty.  (Tr. 1364-1365)

The state appellate court determined that defense counsel had opened the door on the veracity issue when he first cross-examined Moreno on the subject.  *Bruce*, 2009 WL 4170493, *11 (¶ 76) (Ohio App. 8th Dist. Nov. 25, 2009).  The appellate court reasoned that since counsel invited the error, he could not now claim Bruce was denied a fair trial.  *Id*.  Bruce asserts that the victims' step-grandmother, Betty Parson, later testified that N.W. was not telling the truth in her video interview.  (Doc. No. 13 at 25; Tr. 1490.)

The state appellate court, applying Ohio law, found that defense counsel had opened the door:

{¶ 76} First, Bruce argues various witnesses, including Anita Moreno, were allowed to testify about the victims' truth and veracity. However, the record indicates that defense counsel first elicited this testimony. The following exchange took place

---

[5]On direct appeal to the state appellate court, Bruce argued that other witnesses provided improper testimony, but in his appeal to the Ohio Supreme Court, he limited the claim to Moreno's testimony.  (Doc. No. 8-37, Exh. 34, p. 7.)  Bruce has procedurally defaulted this claim as to the other witnesses.  *See Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  Since Bruce has not argued cause or prejudice for the default or actual innocence, he has waived such claims.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

between defense counsel and Moreno:

"Q. You have no corroboration by physical examination of any of these complaints, correct?

A. Correct.

Q. You have, at least with N, she appears to be a liar, stealer, threatener and fighting; is that right?

* * *

Q. Not very trustworthy person with all those traits?

A. I think that depends on who you are talking to. I would trust her." [FN36]

   FN36. Tr. 1376-1377.

{¶ 77} Defense counsel also opened the door when he cross-examined Betty Parson, the victims' grandmother, as follows:

"Q. Do you feel that you have the knowledge of them to form an opinion, as to their truth and honesty?

A. Yes."[FN37]

   FN37. Tr. 1467.

{¶ 78} A review of the above exchanges indicates that defense counsel opened the door to elicit the testimony regarding the victims' truth and veracity. Consequently, it is disingenuous to now take issue with the errors he invited.

*Bruce*, 2009 WL 4170493, *11 (¶¶ 76-78) (Ohio App. 8th Dist. Nov. 25, 2009).

"When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error." *Fields v. Bagley*, 275 F.3d 478, 487 (6th Cir. 2001). Here, as the appellate court found, defense counsel opened the door eliciting testimony regarding the victims' truth and veracity. Additionally, Bruce has failed to show that the appellate court's decision was an unreasonable application of law.

Bruce also contends that Moreno was improperly permitted to express her opinion that the victims suffered from post-traumatic stress disorder. (Doc. No. 13 at 21.) The record reflects, however, that Moreno, although not testifying as an expert, was clearly qualified to make such a diagnosis. Moreno, the Director of the Child and Adolescent Services at the Nord Center, is an experienced counselor, working with children and families for twenty years in the mental health field. (Tr. 1365.) She received an undergraduate degree in social work from Cleveland State

31

University, a Master's degree at Case Western Reserve University, where she has taught family therapy since 1998.  *Id.*  The state appellate court found that Moreno was qualified to make a mental health diagnosis that the victims suffered from post traumatic stress disorder.  *See Bruce*, 2009 WL 4170493, *13, 2009-Ohio-6214 (¶ 86).

Bruce also claims prosecutorial misconduct pertaining to several statements made during closing arguments: (1) "He did it to his wife's children;" (2) "Bruce told E.B. 'One time in the past, one time, I had a weak moment and I touched my daughter,' The daughter comes in and tell you it was for four years all the time;" and finally, (3) "Darrell Bruce is guilty of rape."  (Doc. No. 13 at 23-24.)  Additionally, he asserts that prosecutorial misconduct occurred during the cross-examination of Betty Parsons, Bruce's mother, while asking questions regarding whether Parsons believed the victims were truthful.  (Doc. No. 13 at 22-23.)

To constitute a constitutional violation, a prosecutor's misconduct must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  The Sixth Circuit has stated that a court should perform a two-step test to determine whether a prosecutor's inappropriate statements warrant a reversal.  *See United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir. 2004); *United States v. Carroll*, 26 F.3d 1380, 1384-87 (6th Cir. 1994).  First, a court must determine whether a prosecutor's statements were improper followed by a second determination as to whether the impropriety constitutes reversible error.  *DeJohn*, 368 F.3d at 548.  The following four factors are used to determine whether reversal is necessary: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused."  *Id., quoting Carroll*, 26 F.3d at 1385.  When evaluating claims of improper prosecutorial statements, courts look at the existence of objections, curative instructions, the likelihood that a jury will be misled as a result of the remarks, and the strength of the evidence against the defendant.  *Wilson v. Mitchell*, 250 F.3d 388, 399 (6th Cir. 2001) Further, prosecutorial misconduct claims are subject to harmless error analysis.  *See Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2006) ("An error is found to be harmless unless it 'had

32

substantial and injurious effect or influence in determining the jury's verdict.'") (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

The state appellate court concluded that the prosecutor's conduct did not affect Bruce's right to a fair trial:

{¶ 80} In addressing a claim for prosecutorial misconduct, we must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected the defendant's substantial rights.[FN38] The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor."[FN39] A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments.[FN40]

FN38. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883.

FN39. *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78.

FN40. *State v. Treesh*, 90 Ohio St.3d 460, 464, 739 N.E.2d 749, 2001-Ohio-4.

{¶ 81} Appellate courts ordinarily decline to reverse a trial court's judgment because of counsel's misconduct in argument unless (a) the argument injects non-record evidence or encourages irrational inferences, such as appeals to prejudice or juror self-interest or emotion, (b) the argument was likely to have a significant effect on jury deliberations, and (c) the trial court failed to sustain an objection or take another requested curative action when the argument was in process.[FN41] Generally, the prosecution is entitled to a certain degree of latitude in making its closing remarks.[FN42]

FN41. *State v. Maddox* (Nov. 4, 1982), Cuyahoga App. Nos. 44600 and 44608, ¶ 9-10.

FN42. *State v. Perry*, Cuyahoga App. No. 84397, 2005-Ohio-27, *citing State v. Woodards* (1966), 6 Ohio St.2d 14, 215 N.E.2d 568.

{¶ 82} In the instant matter, the appellant claims the prosecutor erred by making the following statements in his closing arguments: (1) "He did it to his wife's children"; (2) "Bruce told E.B. 'One time in the past, one time, I had a weak moment and I touched my daughter.' The daughter comes in and tells you it was for four years all the time"; and finally, (3) "Darrell Bruce is guilty of rape."

{¶ 83} After reviewing the entire trial record, we find the prosecutor's conduct was not improper as to affect Bruce's right to a fair trial. The prosecutor was commenting on the evidence he presented at trial. The prosecutor was simply reiterating the testimony of the victims, E.B., and his biological daughter D.J.D. "Darrell Bruce is guilty of rape," although it may be an inartful comment, it was taken out of context by Bruce and did not amount to sufficient prejudice to deny him a fair trial.

*Bruce*, 2009 WL 4170493, at *12, 2009-Ohio-6214 (¶¶ 80-83).

The state appellate court's decision was based upon a reasonable determination of the facts in light of the evidence presented in the state court proceedings.  Upon review of the record, it

indeed appears that the prosecutor's comments were made in response to the evidence presented. The comment that "he did it to his wife's children" was made in the context of the prosecutor providing nine reasons why the jury should find that Bruce was likely to reoffend for purposes of the sexually violent predator specification.  The prosecutor was referring to what he believed to be the strength of the State's evidence, illustrating the corroboration between witnesses and a lack of motive to lie.  He was asking the jury to assess the credibility of the witnesses in conjunction with the evidence and to determine whether the State had proven the case. Moreover, the trial judge instructed the jurors that, "[a]nything else which any of the attorneys have said during the trial is not evidence and may not be utilized as evidence in determining what the facts are."  (Tr. 1568; Doc. No. 12-11 at 132.)  On several occasions the court explained that oral argument was the lawyers' opportunity to state what they believe the evidence established, but that the jurors should rely on their own recollection of the evidence if it is different.  (Tr. 1509, 1510, 1519.)  The court also admonished the jurors that they were the sole determiners of the facts.  (Tr. 1565, 1572.)

The strength of the evidence also reduces the likelihood that the jury's decision was influenced by the prosecutor's comments.  *Cf. Darden v. Wainwright*, 477 U.S. 168, 182 (1986). The state appellate court determined that there was sufficient evidence to convict Bruce of rape and gross sexual imposition.  *See Bruce*, 2009 WL 4170493, *6 (¶¶ 41-52) (Ohio App. 8th Dist. Nov. 25, 2009).  Both victims testified that they were raped when their mother was not home and that Bruce overpowered their attempts to resist the sexual assaults.  *Id*. at ¶¶ 48-49.  The record also reflects that there was corroborating testimony from a witness other than the mother.  Amy Houk, a social worker from Lorain County Children Services interviewed the victims to "gather information to see what was going on at the time [with] the family and the children."  (Tr. 1346; Doc. No. 12-10 at 58.)  These taped interviews were played for the jury.  The State argued at closing arguments that these interviews demonstrated corroboration, as the recordings were consistent with the victims' testimony.  (Tr. 1554; Doc. No. 12-11 at 118.)

Again, the decision of the state appellate court was neither an unreasonable application of the law, nor an unreasonable assessment of the facts.  Bruce's ground nine is without merit.

34

**I.  Ground Ten: Indictment for Sexually Violent Predator Specification ("SVP" Specifications)**

Bruce challenges his convictions for the SVP specifications, arguing that the elements of the specifications were not charged in the indictment, thereby denying him the right to be informed of the nature and cause of the accusation.  (Doc. No. 13 at 25-27.)  Respondent argues that this ground is moot because the state appellate court reversed the convictions on these specifications.  (Doc. No. 12 at 39; Doc. No. 8-26, Exh. 23, p. 38-39.)

Article III, § 2 of the Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings.  This case or controversy requirement means that, throughout the litigation, the petitioner "must have suffered or be threatened with an actual injury . . . likely to be redressed by a favorable judicial decision."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) (*citing Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  A federal court has no authority to render decisions on moot questions.  *Bachman v. Bagley*, 487 F.3d 979, 981 (6th Cir. 2007.)

Pursuant to O.R.C. § 2971.01(H)(1) a "[s]exually violent predator" means a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses."  (Effective April 29, 2005)

The state appellate court, first addressing Bruce's argument that he was denied due process because the sexually violent predator specifications were not sufficiently alleged in the indictment, determined that the specifications mirrored the statutory language.  Further, the court found that it was "uncontroverted that Bruce was previously convicted of a sexually oriented offense."  *Bruce*, at *13, ¶ 93.  *See Bruce*, 2009 WL 4170493, *13, 2009-Ohio-6214 (¶¶ 91-93).  The appellate court later, however, found that because Bruce's prior conviction was six years before the effective date of O.R.C. § 2971.01, the conviction on the sexually violent predator specifications was improper.  The appellate court, therefore, reversed and remanded, in part, "with instructions to the trial court to amend its journal entry to find Bruce not guilty of the

35

sexually violent predator specifications attendant to Counts 1 through 6."

As the SVP convictions were reversed, Bruce's argument is moot and the court has no authority to render a decision.  Furthermore, alleged trial errors in the application of state procedure are typically not cognizable on habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).

### J.  Grounds Twelve and Thirteen: Jury Instructions and Question

In ground twelve, Bruce argues that the trial court improperly answered the jury when it asked: "Is there a difference between the legal definition of address and residence?"  (Tr. 1601.) The trial court responded:

> Ladies and gentlemen, in this case the State of Ohio legislature saw fit to mandate that those individuals in this state, having been classified as sexual offenders, must indicate where they are residing.  That has been labeled as their address.  Residence has nothing to do with it.  It is not an issue of concern for this jury.  You must notify the sheriff where you are.  The sheriff must be able to contact you by the information that you provide as your address.

(Tr. 1601.)  Defense counsel objected to the last sentence.  (Tr. 1602.)

The state appellate court found no error in the explanation given to the jury as "the sheriff must be able to find the registrant at the address provided."  *See Bruce*, *14, 2009-Ohio-6214, ¶ 99.  Bruce argues that the trial court blurred the definition of residence and address and that the jury was not given a written charge as to the supplemented definition.  He contends that O.R.C. § 2945.10(G) requires that jury instructions ". . . when so written and given, shall not be orally qualified, modified or explained to the jury by the court," causing a violation of his due process. (Doc. No. 13 at 28-29.)

In ground thirteen, Bruce asserts that the court's jury instruction was erroneous regarding his actions forming a continuous course of criminal conduct and that he could, therefore, be convicted of crimes committed in Lorain County, despite the fact that the trial was in Cuyahoga County.  (Doc. No. 13 at 29-30.)  Relying on the Ohio and United States Constitution[6], Bruce

---

[6]Bruce relies on Section 10 Article I of the Ohio Constitution that provides a defendant to "a speedy public trial by an impartial jury or the county in which the offense is alleged to have been committed; . . ."  Regarding the U.S. Constitution which provides for "a speedy and public

contends that the court had no authority to so instruct the jury. *Id*. Instead, he claims a constitutional right to have the offenses tried in the county where they occurred. *Id*.

During the State's closing argument, defense counsel objected to the prosecutor's statement that anything occurring in ". . . Lorain County is still under your jurisdiction because it is a continuing course of criminal conduct." (Tr. 1521.) The trial court immediately gave the following curative instruction:

> Objection will be overruled. Just a minute. The Court will, at this time, do a curative instruction. Ladies and gentlemen, there are some indications criminal activities may or may not have taken place outside Cuyahoga County. The law allows such if criminal conduct forms what is called a continuous course of criminal conduct, then this Court, which is the Court of Common Pleas, would have jurisdiction if it is a continuous course of criminal conduct. The same would be true in Summit County. It would have to be a court of equal jurisdiction. Which means in this State it would have to be a Court of Common Pleas, general jurisdiction. As long as it is a Court of Common Pleas, general jurisdiction, and it is a continuous course of criminal conduct, then the Court does have jurisdiction.

(Tr. 1521-1522.)

The state appellate court, applying Ohio law, determined that the trial court gave the proper instruction regarding venue:

> {¶ 108} R.C. 2901.12(H) provides in pertinent part as follows:
>
> "(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
>
> (1) The offenses involved the same victim, or victims of the same type or from the same group.
>
> (2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.
>
> (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective."
>
> {¶ 109} The record supports the conclusion that venue was proper in Cuyahoga County. First, the chain of events commenced in Cuyahoga County at Bruce's Bedford Heights apartment and continued at the parties' residence in North Olmsted. The offenses were part of a course of criminal conduct spanning four years. The offenses were against the same victims and were committed in a similar manner whether in

_____

trial by an impartial jury of the state and district where the crime had been committed."

Cuyahoga or Lorain County.

{¶ 110} Based on the statute, Bruce was properly tried in Cuyahoga County even though some of the offenses occurred in Lorain County. Thus, the trial court gave the proper jury instruction regarding venue.

*Bruce*, 2009 WL 4170493, at \*15, 2009-Ohio-6214 (¶¶ 108-110).

In order to warrant habeas relief, a petitioner must demonstrate that the jury instructions were *both* erroneous and, taken as a whole, so infirm that the entire trial was rendered fundamentally unfair.  *See Estelle*, 502 U.S. at 72, *citing Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  The category of infractions that violate "fundamental fairness" is exceedingly narrow, as the Due Process Clause has limited application beyond the specific guarantees enumerated in the Bill of Rights.  *Id*.  "An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly."  *Estelle*, *citing Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998).  "It is within [a trial judge's] province ... to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination."  *United States v. Frederick*, 406 F.3d 754, 762 (6th Cir. 2005), *quoting United States v. Blakeney*, 942 F.2d 1001, 1013 (6th Cir. 1991).

Errors in jury instructions are generally not cognizable in federal habeas corpus unless they deprive petitioner of a fundamentally fair trial.  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see also Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *Thomas v. Arn*, 704 F.2d 865, 868-69 (6th Cir. 1983).  A habeas petitioner challenging jury instructions must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  An omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law.  *Henderson*, 431 U.S. at 155.

Here, the appellate court upheld the instructions because no error was found in the trial court's explanation and because venue was proper pursuant to Ohio law.  The rulings of the state

appellate court are premised entirely on application of state law, as well as on factual determinations entitled to a presumption of correctness which can only be rebutted by clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998); *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). Nothing in these rulings was contrary to rulings of the United States Supreme Court on a similar question of law, nor did the state courts decide the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. Consequently, there is nothing in the rulings that would lead this Court to find that there has been an infringement of a right guaranteed by the United States Constitution.

Grounds twelve and thirteen are without merit.

**K.  Ground Fourteen: Sentencing Error**

Bruce argues that the trial court improperly sentenced him for a third degree felony with respect to count seven, failure to provide notice of a new address. (Doc. No. 13 at 30-31.) The state appellate court determined that the prior gross sexual imposition conviction was for a felony of the third degree, making his sentence appropriate. *See Bruce,* 2009 WL 4170493, at *17, 2009-Ohio-6214 (¶¶ 119-121). This ground is based solely on an alleged error of state law, and, therefore, it is not cognizable in federal habeas review. *See Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998), *cert. denied*, 525 U.S. 935, 119 S.Ct. 348, 142 L.Ed.2d 287 (1998) (*citing Estelle*, 502 U.S. at 67-68); *Hutchinson v. Marshall*, 744 F.2d 44, 46-47 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221, 105 S.Ct. 1208, 84 L.Ed.2d 350 (1985). As the state appellate court concluded that Bruce was sentenced properly under Ohio statute, this ground is without merit.

**L.  Ground Fifteen: Insufficiency of Evidence**

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). In making such a determination, a district court may not substitute its own

determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6ᵗʰ Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6ᵗʰ Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

"[A] federal habeas court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Jackson*, 443 U.S. at 326. For example, the trier of fact is entitled to disbelieve a defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility on account of a prior felony conviction. *Wright*, 505 U.S. at 2492. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir. 2003). Because the *Jackson* standard and AEDPA both apply to a habeas petitioner's sufficiency-of-the-evidence claims, Bruce's sufficiency claims are reviewed under a double layer of deference. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

The Sixth Circuit has held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction. *United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); *see also O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation

40

marks omitted).

In reviewing Bruce's motion for judgment of acquittal and applying a sufficiency of the

evidence standard[7], the state appellate court upheld each of the convictions:

{¶ 41} In the twenty-second assigned error, Bruce argues he was denied due process of law when the trial court overruled his motion for judgment of acquittal. This assigned error lacks merit.

{¶ 42} Crim.R. 29(A), which governs motions for acquittal, states:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

{¶ 43} The sufficiency of the evidence standard of review is set forth in *State v. Bridgeman*: [FN15]

FN15. (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.

"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."FN16

FN16. *See, also, State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394; *State v. Davis* (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966.

{¶ 44} *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, [FN17] in which the Ohio Supreme Court held:

FN17. (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

"An appellate court's function when reviewing the sufficiency of the evidence to

_____

[7]Bruce's insufficiency claim may be procedurally defaulted as he failed to raise such a claim before the state appellate court.  He did, however, raise the issue before the Ohio Supreme Court (Proposition of Law Eighteen).  *See Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). Nonetheless, the state appellate court conducted a sufficiency analysis, applying the *Jackson v. Virginia* standard, based upon Bruce's argument that he was denied due process of law when the trial court overruled his motion for judgment of acquittal (Assignment of Error Twenty-two). This Court declines to address the procedural default issue, and will instead proceed to address the merits of Bruce's sufficiency claim.  The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

41

support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"

{¶ 45} After reviewing the evidence in a light most favorable to the state, we find that the evidence, if believed, could convince a rational trier of fact that the state had proven beyond a reasonable doubt each element of the charge of rape, gross sexual imposition, and failure to provide notice of change of address.

{¶ 46} In this case, Bruce was charged with three counts of rape, in violation of R.C. 2907.02. Subsection (A)(1) of this statute provides that "no person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * the other person is less than thirteen years of age * * *." Subsection (A)(2) provides that "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 47} Bruce was also charged with three counts of gross sexual imposition, in violation of R.C. 2907.05, which provides that "no person shall have sexual contact with another, not the spouse of the offender * * * when * * * the offender purposely compels the other person to submit by force or threat of force * * * [or] the other person * * * is less than thirteen years of age * * *."

{¶ 48} At trial, both minor victims testified that shortly after their mother began dating Bruce, he commenced touching them inappropriately and such behavior progressed into his repeatedly raping them over a period of four years. Both victims testified that the rapes began at his Bedford Heights apartment and continued at each and every location where the family resided. Both victims testified that Bruce raped them when their mother was not at home, and one victim testified that he raped her while she was sleeping.

{¶ 49} Both victims testified about the efforts they undertook to resist the sexual assaults Bruce inflicted. Each victim testified that Bruce would overpower them to carry out his sexual assault. In addition, it was established that both victims were under the age of 13 at the time of these offenses. Certainly, this testimony, if believed, would convince a rational trier of fact as to Bruce's guilt for these offenses beyond a reasonable doubt.

{¶ 50} As it pertains to the offense of failure to provide notice of change of address, the record indicates that at trial, Detective Paul Soprek, the lead investigator in the case, stated that Bruce had a prior conviction for gross sexual imposition. Detective Soprek said that as a result of said conviction, Bruce was classified a habitual sexual offender and was required to register with the county sheriff once a year.

{¶ 51} Detective Soprek stated that in 2007, Bruce registered his address in Cuyahoga County as 10709 Sprague Road, but in an unrelated civil case, he filed and affidavit claiming that his address was 6725 West Central Avenue, Lucas County, Ohio. According to Detective Soprek, Bruce failed to provide notice of this change of address.

{¶ 52} Based on this testimony, there was sufficient evidence to sustain convictions for failure to provide notice of change of address. Thus, the trial court properly denied

Bruce's Crim.R. 29 motion for acquittal.

*Bruce*, 2009 WL 4170493, at *6-7, 2009-Ohio-6214 (¶¶ 41-52).

In light of the evidence against Bruce, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011) (*quoting Jackson*, 443 U.S. at 319); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." (internal quotation marks omitted)). Furthermore, the testimony of N.W. and D.W. was alone sufficient evidence to support the conviction. The Constitution does not require anything more than credible eyewitnesses.

Additionally, when this case is given "double deference" in applying AEDPA, the Court is limited to reviewing whether the state court's decision was so objectively unreasonable as to be "a close call." *See Lopez*, 426 F.3d at 358 n. 1. The Court is unable to say that the decision was out of line with the general standard set forth in *Jackson v. Virginia*. The state appellate decision denying Bruce's sufficiency of evidence claim was not objectively unreasonable.

Regarding the conviction for failure to provide notice of change of address, the State introduced evidence through Detective Paul Soprek that on September 12, 2007, in an unrelated civil matter, Bruce indicated that he resided in Lucas County, Ohio. (Tr. 1684-1685.) Subsequently, Bruce introduced evidence through a private investigator that the address in Lucas County was nothing more than a post office box. This evidence was before the jury for it to consider when reaching its verdict. This Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, it was constitutionally sufficient to sustain Bruce's conviction.

### M. Ground Eight: Cumulative Error

Bruce argues that the errors committed by the trial court cumulatively denied him a fair trial. (Doc. No. 13 at 19-23.) Specifically, Bruce contends that the court allowed the State to ask leading and irrelevant questions, and that inflammatory and prejudicial evidence was

43

admitted including hearsay, improper opinion evidence, and evidence of his prior conviction.[8] (Doc. No. 13 at 20-21.)

The Supreme Court has repeatedly noted that fundamentally unfair trials violate due process, *see, e.g., Riggins v. Nevada*, 504 U.S. 127, 149, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (*quoting Spencer v. Texas*, 385 U.S. 554, 563-64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)), and common sense dictates that cumulative errors can render trials fundamentally unfair. *Williams v. Anderson,* 460 F.3d 789, 816 (6th Cir. 2006). Additionally, the Supreme Court has expressly cumulated prejudice from distinct errors under the Due Process Clause. *Chambers v. Mississippi*, 410 U.S. 284, 298, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ("We need not decide, however, whether this error alone would occasion reversal since Chambers' claimed denial of due process rests on the ultimate impact of that error when viewed in conjunction with the trial court's refusal to permit him to call other witnesses."). *Williams* at 816. Nonetheless, the law of this Circuit is that cumulative error claims are not cognizable on habeas review because the Supreme Court has not spoken on this issue. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (discussing cumulated evidentiary errors); *see also Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002).

The state appellate court rejected Bruce's argument as follows:

{¶ 84} In the ninth assigned error, Bruce argues he was denied a fair trial by virtue of cumulative errors throughout the trial. Although Bruce alleges several prejudicial errors, we have addressed the majority of them in other assigned errors, and will limit our discussion to his claim of improper opinion testimony. Bruce complains that social workers Amy Houk and Anita Moreno were allowed to provide opinion testimony.

{¶ 85} Houk testified generally about the procedure her agency utilizes to determine whether counseling, police investigation, or medical treatment is necessary. Houk testified that she is qualified to render a disposition of a case, as to "substantiated," to find "unsubstantiated," or "indicate the validity of facts."

{¶ 86} Moreno, who holds a masters degree in social work and teaches at Case

---

[8]Bruce raised these issues on direct appeal, but the state appellate court discussed only the improper opinion evidence. (Doc. No. 8-20 at 33-36.) As Bruce did not identify any cumulative errors in his Petition, Respondent addressed only the improper opinion evidence based upon the appellate court's decision. The Court notes that Bruce's state appellate arguments as to this ground are identical to his federal habeas Petition.

44

Western Reserve University, has worked in the field of mental health for more than 20 years. Moreno is qualified to make a mental health diagnosis and testified that both victims suffer from post traumatic stress disorder.

{¶ 87} Our review of the record reveals that neither Houk nor Moreno offered improper opinion testimony. Consequently, we must reject the premise of Bruce's argument.

*Bruce*, 2009 WL 4170493, at *12-13, 2009-Ohio-6214 (¶¶ 84-87).

As Bruce's cumulative error claim is not cognizable on habeas, this ground is not reviewable.  Moreover, this Court has already determined these claims to be meritless.

### V.  Conclusion

For the foregoing reasons, it is recommended that Bruce's Petition be denied.


s/ Greg White_____
United States Magistrate Judge


Date:   February 17, 2012


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

45