UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------
                                            :
                                            :
DARRELL BRUCE,                              :        CASE NO. 1:10-CV-2894
                                            :
            Petitioner,                     :
                                            :
vs.                                         :        ORDER & OPINION
                                            :        [Resolving Docs. No. 1, 18]
ROBERT WELCH, Warden,                       :
                                            :
            Respondent.                     :
                                            :
-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Darrell Bruce petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

[Doc. 1.]  Bruce seeks relief from convictions in Ohio state court for raping his then-wife's seven-

year-old and nine-year-old daughters, gross sexual imposition, and failure to notify of a change of

address.  Respondent, Warden Robert Welch, opposes issuance of the writ.  [Docs. 12.]  Magistrate

Judge Greg White filed a Report and Recommendation recommending that this Court deny Bruce's

petition.  [Doc. 15.].  Bruce filed objects to the Magistrate Judge's Report and Recommendation in

its entirety.  [Doc. 18.]  For the reasons that follow, the Court **ADOPTS** the Magistrate Judge's

Report and Recommendation and **DENIES** Bruce's petition for a writ of habeas corpus.

## I.  Background

        A Cuyahoga County grand jury indicted Petitioner Darrell Bruce on three counts of rape and

three counts of gross sexual imposition with sexually violent predator specifications attached to each

count, as well as failure to provide notice of a change of address as required for sex offenders.  *State*

Case No. 1:10-cv-2894
Gwin, J.

*v. Bruce*, 2009 WL 4170493 at *1 (Ohio Ct. App. 2009). On July 31, 2008, a petit jury convicted Bruce on all charges except one of the rape charges.[1] *Id.* at *3. The trial court sentenced Bruce to consecutive terms of life without parole for the rape counts, two years to life on the gross sexual imposition counts, and five years for failing to provide notice of change of address to be served consecutively. *Id.*

The Ohio Court of Appeals detailed the evidence presented at trial:

During the trial, the state proved that Bruce, an admitted sex offender, raped the nine-and seven-year-old daughters of his then wife E.B. [FN2] He raped them separately over a period of four years according to their respective testimony. One victim, N.W., was fourteen years old at the time of trial and nine years old when the rapes began. She testified that shortly after her mother began dating Bruce in 2001, she and her sister D.W., 13 years old at the time of trial, would stay at Bruce's house after school, until their mother came to pick them up after work. D.W. was 7 years old at the time.

Bruce would rape N.W. approximately two out of five school days. The incidents generally occurred when D.W. was taking a nap or was in the front room. Bruce continued to rape N.W. after they began living with him, and continued after his marriage to her mother.

N.W. further testified that the rapes occurred at every place the family resided. N.W. always resisted, but Bruce would eventually overpower her because of his size. When the rapes began, N.W. told her mother that Bruce was "pulling" on her, but the rapes continued. Later, she told a friend at school, and eventually a police officer came to her school and asked her about the rapes, but she denied the incidents. N.W. was afraid to disclose the rapes because she did not want others to know, and because Bruce was a minister, she feared no one would believe her.

In 2007, after Bruce was no longer living with the family, N.W. and her mother were at Golden Corral restaurant when she decided to talk about the rapes. N.W. told her mother that Bruce had been molesting and raping her for a number of years.

D.W. testified that at first, Bruce began touching her on her buttocks. D.W. was unaware this was inappropriate behavior. Later, when her mother and sister were away, Bruce would rape her. Bruce would rape her on an ongoing basis at each place where the family resided.

---

[1]A Cuyahoga County Grand Jury initially indicted Bruce on November 15, 2007, and a first trial commenced on March 20, 2008, but the jury was unable to reach a unanimous verdict. *State v. Bruce*, 2009 WL 4170493 at *1 (Ohio Ct. App. 2009). A second jury trial followed after which the jury convicted Bruce. *Id.*

Case No. 1:10-cv-2894
Gwin, J.

At trial, D.W. related several instances of rape, including one occasion when Bruce instructed her to take off her clothes as if she was going to take a shower. D.W. proceeded to the bathroom, took off her clothes and was about to enter the shower, when Bruce summoned her to his room.  On that day, he raped her.

D.W. told her mother that Bruce was touching her inappropriately, and her mother indicated that she would deal with it.  The incidents would stop for a short while and then resume. Bruce continued to rape D.W. until he moved out of the family residence.

It was after Bruce moved out that D.W. and N.W. disclosed more about the incidents to their mother. D.W. had not previously disclosed the attacks because Bruce had instructed her not to tell her mother.

The mother, E.B., testified that she was divorced from her daughters' father and living with her father when she met Bruce in May 2001. E.B. testified about the dating and courtship following their meeting.  A few months after their meeting, Bruce disclosed to E.B. that he had been previously convicted of sexually assaulting his biological daughter, that he had been imprisoned, and had been labeled a sexual offender.  E.B. said Bruce assured her that the incident with his daughter occurred once in a moment of weakness as result of drug abuse.

E.B. subsequently introduced Bruce to her daughters and later allowed him to pick up the children from school and keep them at his apartment until she finished work.  One day in June 2002, E.B. arrived unexpectedly early at his apartment. When she entered the apartment, she discovered Bruce on the living room couch with D.W. laying on top of him. D.W. was unclothed below her waist and her underpants were lying on the floor.

E.B. testified as follows about the ensuing events:

Q. What did you do when you saw that scene?
A. * * * I sent her out of the room.  I began to fuss at Mr. Bruce, he started-what I call suicidal in the sense that he went to the kitchen and got a knife and gave it to me.  He said, 'You can kill me.  I'm sorry.' I was telling him that it's over, just forget everything.  He was like, 'Don't tell my mom.  If you tell her, that will kill her.  I am so sorry.' And went through that. [FN 3]

After this incident, E.B. decided to end the relationship, but Bruce was remorseful and persistent, which led her to stay in the relationship. Subsequently, in March 2003, E.B. married Bruce.  She later gave birth to their son, D.B.  They changed residences many times during which the relationship soured.  They separated in 2005.

After Bruce left the family residence, E.B.'s daughters disclosed that Bruce had been sexually assaulting them.  Her daughters did not disclose the extent or details of the assaults, but indicated that they were ready to get help in addressing the situation.  E.B. was conflicted about how to proceed because the family was active

Case No. 1:10-cv-2894
Gwin, J.

in the community and Bruce was a church minister, but she eventually sought help for the children and reported it to the authorities.

At trial, Bruce's biological daughter, D.J.D., age 28, testified that she lived with Bruce from birth until age two, when her biological mother died giving birth. D.J.D. later lived with Bruce in New York and Ohio from age 5 until age 10. D.J.D. testified that Bruce began raping her when she was about six years old and continued to rape her repeatedly for the next four years.

D.J.D. stated Bruce would rape her while her stepmother was at work. He would awaken her at night and rape her while her younger brother was sleeping. D.J.D. always resisted, to no avail. D.J.D. testified about one incident as follows:

> We lived in Aurora, and we had a split-level house in Aurora, and one time he raped me in the family room. It wasn't in the basement part because there was another family room. It was in the living room/family room area. It was early in the morning before he went to work because he was a garbage man for the city, and he had one of those zip-up-you know, the zip-up suits they wear. He took it off a little bit so he could, you know, so he could-I was going upstairs to tell. He stopped me when I was going up the stairs and he was on his knees. He said, "I'll go to jail." I didn't want him to go to jail. He was my dad. It was my dad. I didn't want him to. [FN4]

D.J.D. eventually told the pastor of the church about the ongoing rapes. Criminal charges were brought against Bruce, who ultimately served a ten-year prison term following a plea agreement with the state.

*Id.* at *1-2 (footnotes, further citation omitted).

On this record, the Court of Appeals affirmed Bruce's convictions on the rape and gross sexual imposition charges, as well as the failure to notify charge, but reversed his convictions on the sexually violent predator specifications.[2] *Id.* The trial court then resentenced Bruce to life sentences on the rape charges and consecutive five-year sentences on each gross sexual imposition and failuer to notify charges. [Doc. 8-45.] The Ohio Court of Appeals affirmed the resentencing. *See Bruce, 2011 WL 917003.*

---

[2]/Specifically, the Ohio Court of Appeals found that "because Bruce's prior conviction was in 1991, six years before 1997, it was improperly the basis of the prior conviction for the sexually violent predator specifications." *Id.* at *16.

Case No. 1:10-cv-2894
Gwin, J.

Bruce now petitions this Court for a writ of habeas corpus. [Doc. 1.] He asserts fifteen grounds for relief. [Doc. 1.] On March 29, 2011, Respondent, Warden Robert Welch, moved to dismiss Bruce's petition. [Doc. 8.] This Court denied Respondent's motion. [Doc. 14.] On February 17, 2012, Magistrate Judge Greg White issued a Report and Recommendation recommending that this Court deny Bruce's petition on all fifteen grounds. [Doc. 15.] Petitioner "object[ed] to each and every finding made by the Magistrate Judge and request[ed] that this [C]ourt conduct a *de novo* review of the entire record." [Doc. 18 at 1.] The Court addresses Bruce's objections.

## II. Legal Standard

### A. Federal Magistrates Act

The Federal Magistrates Act requires a district court to conduct a de novo review only of those portions of a Report and Recommendation to which the parties have made an objection. 28 U.S.C. § 636(b)(1). Here, the Petitioner has filed objections to each of the Magistrate Judge's recommendations, except with respect to Ground Ten. [Doc. 18.][3/] This Court therefore reviews *de novo* Magistrate Judge White's Report and Recommendation in its entirety.

### B. The Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs a federal court's review of a state prisoner's habeas corpus petition. AEDPA limits federal review to only those claims in which a petitioner contends that he

---

[3/]In spite of his overarching language, Petitioner apparently does not object to Magistrate Judge White's recommendation that Ground 10, his challenge to his convictions on sexually violent predator specifications. Magistrate Judge White recommends finding that ground moot because the Ohio appellate court reversed his convictions on these specifications. [Doc. 15 at 35.] Petitioner offers no analysis to the contrary in his briefing. Accordingly, the Court does not consider this ground.

Case No. 1:10-cv-2894
Gwin, J.

is in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §

2254(a).  AEDPA provides that federal courts cannot grant a habeas petition for any claim that the

state court adjudicated on the merits unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based upon an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* *Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find

a violation of law 'clearly established' by holdings of the Supreme Court, as opposed to its dicta, as

of the time of the relevant state court decision."  *Id.*  (citing *Williams v. Taylor*, 529 U.S. 362, 412

(2000)).  Meanwhile, under the 'unreasonable application' clause, "a federal habeas court may grant

the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529

U.S. at 413.  The Sixth Circuit holds that, even if a federal court could determine that a state court

incorrectly applied federal law, the court still could not grant relief unless it also finds that the state

court ruling was unreasonable.  *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000).

Where a state court did not adjudicate a federal constitutional claim on the merits, however,

AEDPA deference does not apply.  *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009); *Brown v.

Smith*, 551 F.3d 424, 429 (6th Cir. 2008).  In such cases, a federal court applies the pre-AEDPA

standard of review and reviews questions of law de novo and questions of fact for clear error.  *Evans*,

575 F.3d at 564; *Brown*, 551 F.3d at 430; *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

### III.  Analysis

-6-

Case No. 1:10-cv-2894
Gwin, J.

The Court addresses each of Bruce's objections to Magistrate Judge White's Report and Recommendation in turn.

**A. Ground One: Transcript**

Bruce first says that the trial court erroneously denied him a free copy of the transcript of his first trial, and "the Magistrate Judge, like the Court of Appeals for Cuyahoga County, failed to consider this issue." [Doc. 18 at 2.] This statement is false. The Court of appeals determined that "Bruce was not entitled to a transcript at the state's expense because he has failed to establish his indigency for purposes of obtaining the transcript." *State v. Bruce*, 2009 WL 4170493 at *3. Magistrate Judge White evaluated this finding and likewise concluded that "[a]s Bruce did not establish his indigency, the appellate court properly found he was not entitled to a free transcript." [Doc. 15 at 13.] Thus the Court considers Bruce's objections within the framework of AEDPA deference.

Bruce claims "manifest injustice" because "the prosecutor had the transcript of the first trial in his possession." [Doc. 18 at 2.] In support, Bruce relies on *Britt v. North Carolina*, 404 U.S. 226 (1971), which, he says, held that "the state must provide an indigent defendant with a transcript of prior proceedings when the transcript is needed for an effective defense or appeal." [Doc. 18 at 2.] Indeed, Bruce notes that he *was* declared indigent throughout the course of his appeal. Thus, he says that the trial court's decision to deny him a free transcript violated his constitutional rights.

This line of reasoning fails. Bruce does not show that the requirement that he pay for the transcript was not merely wrong, but "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2255(d)(1). The Court agrees that "there can be no doubt that the State must provide an indigent defendant with a transcript

Case No. 1:10-cv-2894
Gwin, J.

of prior proceedings when that transcript is needed for an effective defense or appeal." *Britt ,*404 *U.S.* at 227. But Bruce has not proven that the state court's determination that he was not indigent was unreasonable. The Court is not aware of any Supreme Court cases precisely defining indigency, and Bruce cites none in support of his petition. For purposes of appointment of counsel, indigency involves "lack of funds to hire a lawyer." *Gideon v. Wainwright*, 372 U.S. 335, 338, (1963). Defining indigence for purposes of obtaining a transcript as lack of funds either to hire a lawyer or to purchase the transcript, Bruce's claim fails. Under neither definition was the state court's determination unreasonable. That court noted that as of April 21, 2008, Bruce received approximately $92,192.69 in some kind of payment, had retained his own counsel, and had declined the Court's invitation to declare his funds depleted. *State v. Bruce*, 2009 WL 4170493 at * 4. From these facts, the court's conclusion that Bruce was not indigent reasonably flowed and was reasonable.

**B. Ground Two:  Confrontation Clause**

Bruce next contends that the trial court violated his Sixth Amendment right "to be confronted with the witnesses against him." U.S. Const. amend VI. He says that the trial court erred when it allowed recorded interviews of N.W. and D.W. conducted by social worker Amy Houk to be played during Ms. Houk's direct examination. First, he says that the interviews were not subject to cross examination, even though the child-witnesses were present and subject to cross examination at trial. Second, he says that these interviews were offered for witness bolstering, and so should only have been admitted to rebut an allegation of recent fabrication under the Ohio Rules of Evidence.

Both arguments miss the mark. First, the Confrontation Clause bars the admission of testimonial, out-of-court statements where the declarant is not present at trial, and the defendant has

Case No. 1:10-cv-2894
Gwin, J.

not had a prior opportunity for cross examination. See *Crawford v. Washington*, 541 U.S. 36, 68 (2004). On the other hand,

> when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. *See California v. Green*, 399 U.S. 149, 162 (1970). It is therefore irrelevant that the reliability of some out-of-court statements " 'cannot be replicated, even if the declarant testifies to the same matters in court.' " Post, at 1377 (quoting *United States v. Inadi*, 475 U.S. 387, 395 (1986)). The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

*Crawford*, 541 U.S. 59 n.9. Petitioner concedes that all of the witnesses presented on video were testified at trial [Doc. 18 at 4.] Accordingly, the Confrontation Clause did not bar the video's admission.

Bruce's second Confrontation Clause argument conflates the video's admissibility under the rules of evidence—a state law issue not properly before this Court—and the Confrontation Clause—a constitutional safeguard. *See Crawford*, 541 U.S. at 51 ("[N]ot all hearsay implicates the Sixth Amendment's core concerns."). The Confrontation Clause bars admission of some testimonial hearsay. The rules of evidence govern when and how evidence that does not violate the Confrontation Clause may be admitted. The former is a constitutional issue cognizable by this Court; the latter is issue is a matter of state law on which this Court takes no position and can offer no relief. *Cf. id.* at 68 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . ."). The decisions of Ohio's courts are final on such issues of admissibility. *See* 28 U.S.C. § 2254(d).

## C. Ground Three: Spousal Privilege

Section 2254 likewise bars this Court from considering Bruce's claim for relief based on purported violations of the spousal privilege. As Bruce says, "[t]he Ohio Supreme Court has

Case No. 1:10-cv-2894
Gwin, J.

considered the spousal competency rule both under the Ohio rules of evidence and § 2945.42 of the

Ohio Revised Code. "  [Doc. 18 at 6.]  Neither implicates a federal constitutional right.  Thus, to

succeed, Bruce must show that the "evidentiary ruling is so egregious that it results in a denial of

fundamental fairness," and thereby "may violate due process and thus warrant habeas relief."

*Sandoval v. Toledo Corr. Inst.*, 409 F. App'x 847, 850 (6th Cir. 2010) (quoting *Bugh v. Mitchell*, 329

F.3d 496, 512 (6th Cir.2003)).  He cannot do so based on a purported violation of the spousal

privilege because "the [spousal] privilege does not have a grounding in the concepts that underpin

the constitutional guarantee of due process."  *Id.* at 851.  Accordingly, this claim also fails.

**D.  Ground Four:  Phone Recordings**

Bruce next says that police recording of phone conversations with his wife violated his

Fourth Amendment rights because state agents encouraged then-Mrs. Bruce to call Mr. Bruce,

thereby making her a state agent.  The Magistrate Judge recommended that this Court deny this claim

because Bruce had full and fair opportunity to litigate this claim before Ohio's courts.  *See Stone v.*

*Powell,* 428 U.S. 465, 494-95 (1976) ("[W]here the state has provided an opportunity for full and

fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas

corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was

introduced at trial.")  [Doc. 15 at 18.]  Bruce interprets this to mean that "[t]he magistrate judge

found there was no constitutional violation."  [Doc. 18 at 7.]  Again Bruce mischaracterizes the

Magistrate Judge's Report and Recommendation.

On collateral review, a court does not decide whether Bruce's Fourth Amendment rights were

violated.  *See Withrow v. Williams*, 507 U.S. 680, 686 (1993).  Instead, because the exclusionary

remedy of *Mapp v. Ohio*, 367 U.S. 643 (1961) is not available on collateral review, the Court denies

Case No. 1:10-cv-2894
Gwin, J.

relief.  *See Withrow*, 507 U.S. at 586.  "[U]nless the claimant shows that the sate did not provide him

'an opportunity for full and fair litigation of [his] Fourth Amendment claim,' " a federal court cannot

consider the claim as a basis for a writ of habeas corpus.  *Rashad v. Lafler*, 675 F.3d 564, 570 (6th

Cir. 2012).

      The Court follows that precedent here.  The Ohio Court of Appeals considered Bruce's claim

that the trial judge improperly admitted these recorded phone conversations.  *State v. Bruce*, 2009

WL 4170493 at *5.  Accordingly, this Court cannot consider Bruce's claim for relief.

**E.  Ground Five:  Duplicative Counts**

      Bruce next claims that the indictment under which he was charged violated his Sixth

Amendment right "to be informed of the nature and cause of the accusation[s]" against him because

it lacked specific dates on which the charged sexual assaults.  [Doc. 18 at 10.]  The Magistrate Judge

recommended finding that "Bruce was fairly informed of the charges, and had sufficient information

to adequately prepare a defense."  [Doc. 15 at 21.]  Bruce now objects that "[o]verlooked by the

Magistrate judge, was (sic) the allegations in the indictment."  [Doc. 18 at 10.]  Whatever this

statement means, "[b]eyond notice, a claimed deficiency in a state criminal indictment is not

cognizable on federal collateral review."  *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002).

      A grand jury indicted Bruce on two counts of raping Jane Doe I (identified by birth date)

differentiated by time period.  [Docs. 8-4, 8-5.]  It indicted Bruce on one count of raping Jane Doe

II and three counts of gross sexual imposition, all for the same time period.  [Docs. 8-6, 8-7, 8-8, 8-

9.] It also indicted Bruce for failing to update his address as required of habitual sex offenders under

Ohio law.  [Doc. 8-10.]  The petit jury ultimately convicted Bruce on all counts.  [Doc. 8-18.]

      Generally, "an indictment is sufficient if it, first, contains the elements of the offense charged

Case No. 1:10-cv-2894
Gwin, J.

and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "[F]airly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005). Bruce does not suggest how the indictment fails to offer the relevant statutory elements, nor that he could be charged for further failing to register, or rapes or gross sexual imposition involving children with the same birth dates in the same period.[4/] The Court finds that the indictment in this case meets this standard. The Constitution requires nothing more.

**F.  Ground Six: Prior Bad Acts Testimony by Bruce's Biological Daughter**

Bruce next argues that he was denied a fair trial, because the trial court permitted his biological daughter to testify that Bruce raped her, an offense of which he was convicted and for which he was subject to sex-offender registration requirements.  [Doc. 18 at 12.]  Inexplicably, Bruce's brief contends that the Magistrate Judge "undertook no substantive analysis of this claim" other than the "observation" that the "court of Appeals for Cuyahoga County ruled that this evidence was proper claiming that a trial court had broad discretion to admit such evidence." [Doc. 18 at 12.] The Court finds this statement highly disingenuous.  Magistrate Judge White's Report and Recommendation undertakes approximately three pages of analysis of this claim, more than Petitioner's own brief.  [Doc. 15 at 22, 26-27.]

The Court agrees with Magistrate Judge White that "[t]here is no clearly established Supreme

---

[4/]Bruce relies on *Olsen v. McFaul*, 843 F.2d 918, 931 (6th Cir. 1988) to suggest that he received insufficient notice in the indictment.  [Doc. 18 at 11.]  The Court doubts that this case is relevant.  AEDPA permits a petitioner relief only on the basis of "clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  For the same reasons, Bruce's citations to Cuyahoga County cases provide no basis for relief under AEDPA.  *Cf. Marbury v. Madison*, 5 U.S. 137, 177 (1803).

Case No. 1:10-cv-2894
Gwin, J.

Court precedent which holds that a state violates due process by permitting propensity evidence through testimony about other bad acts." [Doc. 15 at 26.]  For Bruce's claim to succeed, Petitioner must show that the admission of this evidence either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.  Bruce's Petition [Doc. 1], Traverse [Doc. 13], and Objections to the Magistrate Judge's Report and Recommendation [Doc. 18.] cite no Supreme Court cases finding that the admission of prior bad acts evidence violates the United States Constitution, and the Court is aware of none.  As such, Bruce cannot qualify for relief under § 2254(d)(1).  The second provision "applies when a 'claim,' not a component of one, has been adjudicated." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).  Under that provision, Petitioner must show that the trial court made an unreasonable determination of fact and that this fact caused his trial to be unfair.  *See Bobby v. Dixon*, 132 S. Ct. 26, 29 n.1 (2011) (*per curiam*).  But both the trial court's decision to allow Bruce's daughter to testify and its subsequent determination that the testimony did not result in an unfair trial were determinations of law, not fact.  As such, this purported error provides also no grounds for relief.

## G.  Ground Seven:  Denial of Continuance

Bruce next claims that the trial court's decision to deny him a continuance before the testimony of his biologcal daughter "effectively denied [him] his right to the assistance of counsel and his right to present a defense." [Doc. 18 at 15.]  Bruce cites no Supreme Court cases in support of his claim to relief.  The Supreme Court has, explained, however that

Case No. 1:10-cv-2894
Gwin, J.

> [t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (citations omitted).  And, a claim of prejudicial error by the Court cannot be revived under the guise of ineffective assistance of counsel.  *See Paull v. United States*, No. 10-cv-2060, 2011 WL 2494114, at *2 (N.D. Ohio June 22, 2011) (citing *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)).[5/]

Thus, his claim can only succeed if he can show that the adjudication of this claim in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  But again, Bruce cannot succeed because a claim based on a denied continuance does not depend on an unreasonable determination of facts, but on a legal determination.  *See Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004).

**H.  Ground Eight: Cumulative Trial Errors**

Bruce next claims that an accumulation of trial errors compounded to deny him due process.  Some combinations of trial errors, can implicate constitutional due process.  *See Chambers v. Mississippi,*. 410 U.S. 284, 290 n.3 (1973).  The requisite combination to rise to this level, however, is less clear.  The Constitution guarantees only "a right to examine the witnesses against him, to offer

---

[5/]Even if Bruce were able to show that this claim should be evaluated under the rubric of ineffective assistance of counsel, Bruce could not succeed.  A claim of ineffective assistance of counsel requires that Petitioner  show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Bruce does not even explain what the denied continuance would have enabled his counsel to do.  *Cf. United States v. Garner*, 507 F.3d 399, 408 (2007).  Acordingly, he fails *Strickland*'s first prong.

Case No. 1:10-cv-2894
Gwin, J.

testimony, and to be represented by counsel." *Id*. 295.[6/]  And AEDPA contemplates strict review: "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). *Brecht*, in turn, explains that "[t]rial error 'occur[s] during the presentation of the case to the jury,' and is amenable to harmless-error analysis because it 'may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].'" *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993) (alterations in original).[7/]  Petitioner says that these authorities invite this Court to revisit and second-guess the trial court's rulings on matters such as leading questions, limits on cross examination, relevance, hearsay, etc.  [Doc. 18 at 16-20.]

The Court disagrees.  Under AEDPA, the Court asks only whether it was reasonable for the Ohio Court of Appeals' to conclude that Bruce was not denied a fair trial.  Nor can Bruce succeed on AEDPA's unreasonable determination prong.  Under that prong, "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) *cert. denied*, 132 S. Ct. 2751 (2012).  Even assuming the purported errors Bruce identifies were in fact errors, Bruce does not show that they had a "substantial and

---

[6/]Bruce's reliance on dicta from *Payne v. Tennessee* is misplaced.  *Payne* concerned the admissibility of victim impact testimony.  The Court noted in passing that "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).  That sentence in turn cited to *Darden v. Wainwright*, which concerned juror bias and voir dire.  477 U.S. 168, 177 (1986).  While the Court generally agrees with the proposition, the Court finds these authorities too disjointed and removed from the present case to constitute the kind of "clearly established law" that 28 U.S.C. § 2254(d)(1) contemplates as a basis for collateral relief.

[7/]Moreover, "when a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable." *Fry v. Pliler*, 551 U.S. 112, 119 (2007).  Here, however, the Ohio Court of Appeals did not consider the combined weight of the purported errors Bruce identified.  *See State v. Bruce*, 2009 WL 4170493 at *12-13 (Ohio Ct. App. 2009).

-15-

Case No. 1:10-cv-2894
Gwin, J.

injurious effect," nor, for that matter, that they were not harmless.  Absent some argument in

petitioner's brief to such effect, the Court sees little reason to itself search for substantial injurious

effect in the purported errors only to revisit the jury's fact-finding.

## I.  Ground Nine: Prosecutorial Misconduct

Bruce's next says that "[t]he Magistrate Judge did not individually address the claim of

prosecutorial misconduct."  [Doc. 18 at 20.]  This statement is extremely disingenuous.  Magistrate

Judge White devoted more than two pages to addressing this argument.  [Doc. 15 at 32–34.]  The

Court need only consider those parts of a Report and Recommendation to which the parties object.

Since Petitioner alleges that the relevant portion of the Report and Recommendation does not exist,

it stands to reason that Counsel has not objected to that portion.  The Court agrees with Magistrate

Judge White's analysis with regard to these claims, and here summarizes it.

The same standard of trial error that governs Bruce's claims of compounded trial errors,

discussed *supra*, governs his claims of prosecutorial misconduct.  As Magistrate Judge White

explained,

> To constitute a constitutional violation, a prosecutor's misconduct must "so infect[]
> the trial with unfairness as to make the resulting conviction a denial of due process."
> *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  The Sixth Circuit has stated
> that a court should perform a two-step test to determine whether a prosecutor's
> inappropriate statements warrant a reversal.  *See United States v. DeJohn*, 368 F.3d
> 533, 548 (6th Cir. 2004); *United States v.Carroll*, 26 F.3d 1380, 1384-87 (6th Cir.
> 1994).  First, a court must determine whether a prosecutor's statements were
> improper followed by a second determination as to whether the impropriety
> constitutes reversible error.  *DeJohn*, 368 F.3d at 548.  The following four factors are
> used to determine whether reversal is necessary: "(1) whether the remarks tended to
> mislead the jury or to prejudice the accused; (2) whether they were isolated or
> extensive; (3) whether they were deliberately or accidentally placed before the jury;
> and (4) the strength of the evidence against the accused."  *Id*., quoting *Carroll*, 26
> F.3d at 1385.  When evaluating claims of improper prosecutorial statements, courts
> look at the existence of objections, curative instructions, the likelihood that a jury
> will be misled as a result of the remarks, and the strength of the evidence against the

Case No. 1:10-cv-2894
Gwin, J.

> defendant. *Wilson v. Mitchell*, 250 F.3d 388, 399 (6th Cir. 2001)  Further,
> prosecutorial misconduct claims are subject to harmless error analysis. *See Bates v.
> Bell*, 402 F.3d 635, 642 (6th Cir. 2006) ("An error is found to be harmless unless it
> 'had substantial and injurious effect or influence in determining the jury's verdict.'")
> (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

[Doc. 15 at 32-33.]

Bruce says that the prosecutor engaged in misconduct because (1) he "claimed that an offense in Lorain County could be prosecuted in Cuyahoga County," (2) "stated that defendant should be convicted because 'he did it to his wife's children,'" (3) stated that petitioner lived in Toledo, (4) discussed testimony detailing Bruce's prior rape of his daughter, and (5) expressed his belief that Bruce was guilty. [Doc. 18 at 20–21.]

While some of these statements may be cause for concern, the Court assess only whether they rise to a level of "substantial injurious effect."[8]  And the Court's review is not *de novo* but limited to determining whether the Ohio Court of Appeals' determinations in this regard were contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).  Bruce points to no "conclusion opposite to that reached by [the Supreme] Court on a question of law" nor "facts that are materially indistinguishable from a relevant Supreme Court precedent." *Williams*, 529 U.S. at 405.  Thus he cannot succeeded under the statute's "contrary to" avenue.

Section 2254(d)(1)'s "unreasonable application" avenue is no more availing for Bruce.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409.

---

[8]The most problematic error Bruce asserts is the Prosecutor's statement that "Darrell Bruce is guilty of rape." While this statement verges on improper, *see United States v. Fullerton*, 187 F.3d 587, 592 (1999) (comment that "This case is beyond a reasonable doubt." was improper but harmless error), on collateral review, the Court's need not effect its propriety but only the reasonableness of the state court's determination of its injuriousnes.

-17-

Case No. 1:10-cv-2894
Gwin, J.

Critically, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410. Here, the Court finds the Ohio Court of Appeals' decision not objectively "unreasonable." The Ohio Court of Appeals weighed these purportedly injurious statements against the entirety of the trial record and "[found] the prosecutor's conduct was not improper as to affect Bruce's right to a fair trial." *Bruce*, 2009 WL 4170493 at *12. Given the quantum of evidence against Bruce, this determination is reasonable.

**J.  Ground Nine: Purported Testimony of Witnesses Regarding the Veracity of Other Witnesses**

Petitioner next claims that "[d]uring the presentation of the state's evidence, witnesses were allowed to testify as to the truth and veracity of other witnesses." [Doc. 18 at 21.] Yet Petitioner makes no attempt to cite relevant Supreme Court precedent. "[A]s the statutory language makes clear, . . . § 2254(d)(1) restricts the source of clearly established law to this [Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 413. With no clearly established law of the Supreme Court against which to review Bruce's claim,§ 2254 deprives this Court of a basis on which to proceed.

**K.  Grounds Eleven, Twelve, and Thirteen:  Jury Instructions**

Bruce next contends in several grounds for relief, that the jury instructions were "erroneous and resulted in a that (sic) trial was fundamentally unfair." [Doc. 18 at 22.] As he would have it "[s]tate law certainly would be applicable in determining what elements of the offense are needed to be proven Misstatements (sic) of the elements do present a constitutional question." [Doc. 18 at 22.] Yet he presents no cases in support of this inartfully phrased conditional. In fact, the opposite is true:

> Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief. 28 U.S.C. § 2254(a);

Case No. 1:10-cv-2894
Gwin, J.

> *Estelle v. McGuire*, 502 U.S. 62, 67–68(1991).  The exception is when the instruction
> is so flawed as a matter of state law as to "infect[ ] the entire trial" in such a way that
> the conviction violates federal due process.  *Henderson v. Kibbe*, 431 U.S. 145, 154
> (1977).

*Rashad*, 675 F.3d 564, 569 (6th Cir. 2012).

Again, for habeas relief based on a trial error, Petitioner must show that the Ohio Court of Appeals' determinations in this regard were "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).  And once again, Petitioner's briefing leaves it to the Court to divine under which inquiry he claims relief.  His briefing on jury instructions seems to include claims (1) that "this case should have been brought in Lorain County and not Cuyahoga County," [Doc. 18 at 23,] (2) that "the court failed to give a proper instruction concerning the limited use of [Ohio Rule of Evidence] 404(b)evidence (sic)," [Doc. 18 at 24,] (3) that "[t]he court gave an improper and flawed answer . . . to a jury question requesting a definition of 'address' and 'residence,'" [Doc. 18 at 25,] and (4)  that "when the court gave an additional instruction, it should have given the entire instructions in written form."  [Doc. 18 at 26.]

Bruce's first claim that "[t]his case should have been brought in Lorain County and not Cuyahoga County" [Doc. 18 at 23] loses.  The Court expresses its confusion at Counsel's rambling and flailing arguments.  So far as the Court can discern, Bruce challenges the venue jury instruction as misstating the elements and "not requir[ing] the jury to find all of the elements of the offenses beyond a reasonable doubt."  Petitioner then says that "[t]he indictment was alleged (sic) that all acts occurred in Cuyahoga County. . . . This case should have been brought in Lorain County . . . [because] most of the offenses charged occurred in Lorain County." [Doc. 18 at 23.] Read most charitably, Bruce may be arguing (1) that the trial violated his client's Sixth Amendment right to "a trial in the district, where the crime had been committed" (indeed the use of bold font militates

-19-

Case No. 1:10-cv-2894
Gwin, J.

toward this reading), [Doc. 18 at 23,] (2) that "jury instructions . . . [were] both erroneous and

resulted in a that (sic) trial was fundamentally unfair," in violation of his Fourteenth Amendment due

process rights, [Doc. 18 at 22,] or (3) that the evidence presented at trial did not support a finding

that "the acts were a continuous course of conduct." [Doc. 18 at 23.]

        Once again, Bruce fails to carry § 2254's burden. He cites no "clearly established Federal

law, as determined by the Supreme Court of the United States" in support of this claim, nor can this

Court find any on which petitioner could rely. 28 U.S.C. § 2254(d)(1). The principal focus of the

argument seems to be some generalized objection that the trial court's curative jury instructions were

inadequate to the injuries alleged. [Doc. 18 at 23.] Again, the Court reminds Petitioner that:

> Generally speaking, a state court's interpretation of the propriety of a jury instruction
> under state law does not entitle a habeas claimant to relief. 28 U.S.C. § 2254(a);
> *Estelle v. McGuire*, 502 U.S. 62, 67–68(1991). The exception is when the instruction
> is so flawed as a matter of state law as to "infect[ ] the entire trial" in such a way that
> the conviction violates federal due process. *Henderson v. Kibbe*, 431 U.S. 145, 154
> (1977).

*Rashad*, 675 F.3d at 569. And Bruce has not shown a violation of due process. He neither explains

what the Constitution requires of a proper instruction nor how the purportedly defective instruction

caused substantial and injurious effect. [Doc. 18 at 24–25.] Absent some greater specificity in this

regard, the Court cannot divine the errors the Petitioner would claim as the basis for relief. In short,

counsel's arguments on this point suffer from logical incoherence and legal infirmity.

        Bruce's second objection that "the court failed to give a proper instruction concerning the

limited use of [Ohio Rule of Evidence] 404(b)evidence (sic)," is not properly before this Court, or,

in the alternative was waived. [Doc. 18 at 24,] As earlier explained, state law questions, such as

evidentiary rulings, are not cognizable on collateral review. Bruce's objection was not to the

constitutionality of the instruction, but to its fidelity to Ohio Statute. *See Bruce*, 2009WL 4170493

Case No. 1:10-cv-2894
Gwin, J.

at *14 ("defense counsel acknowledged that the trial court's jury instruction was according to statute.") Accordingly, this Court lacks jurisdiction to consider it.  And 28 U.S.C. § 2254 bars Bruce from now raising a constitutional challenge for the first time on collateral attack. [9/]

Bruce next claims, that "the [trial] court gave an improper and flawed answer to" the jury's question "concerning the elements of the offense of failure to register[,] . . . which lessened the state's burden of proof requiring it to prove all elements of the offenses beyond a reasonable doubt." [Doc. 18 at 25.][10/]  Despite its constitutional packaging, Petitioner's argument is actually that the Court's explanation an element of the crime was not in accord with Ohio law, not that it failed to require proof beyond a reasonable doubt.  He says that the Court's definitions of address and residence conflicted with the Ohio Revised Code.  [Doc. 18 at 25.]  Here again § 2254 provides no basis for relief beyond the fundamental fairness inquiry of Due Process.  See 28 U.S.C. 2254(d)  And here again, the Court finds no violation of fundamental fairness.  Bruce, 2009 WL at 4170493 at * 14.  The elements of a crime under Ohio law are matters for Ohio's courts.  Absent constitutional infirmity—on which Bruce cites no authority—this Court lacks jurisdiction to second guess Ohio's courts on the meaning of Ohio law.

Bruce's fourth jury instruction claim, that curative instructions should have been provided in writing, likewise fails to rise to constitutional error.  Bruce again cites no constitutional authority

---

[9/]Petitioner's claims that "the [trial] court, in instructing on other acts of evidence first gave an instruction concerning petitioner's character.  Petitioner did not place his character in evidence.  Therefore, this instruction was improper.  The court, instead of giving a proper limiting instruction, merely re-read Rule 404(B) of the Ohio Rules of Evidence." [Doc. 18 at 24.]  In support of his proposed reading of Rule 404(b), petitioner cites the Sixth Circuit reading of Federal Rule of Evidence 404(b) on direct review in United States v. Jobson, 102 F.3d 214 (6th Cir. 1996).  After block quoting the case with gratuitous use of boldface, Petitioner makes no argument that "the instruction is so flawed as a matter of state law as to 'infect[ ] the entire trial' in such a way that the conviction violates federal due process.  Henderson v. Kibbe, 431 U.S. 145, 154 (1977)." Rashad v. Lafler, 675 F.3d 564, 569 (6th Cir. 2012).  Setting aside the deficiencies of the merits of Petitioner's argument, Petitioner's citation to Jobson is not binding authority on the Ohio Rules of Evidence, even if the language is identical.

[10/]The order in which the Court confronts Petitioner's claims mirrors that of Petitioner's briefing.

Case No. 1:10-cv-2894
Gwin, J.

on this point.  Moreover, a trial court's curative jury instructions "must [be] presume[d] to have been effective unless there is an 'overwhelming probability' that they were ignored.'" *Scott v. Mitchell*, 209 F.3d 854, 879 (6th Cir. 2000) (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)).  Failure to provide curative instruction in writing does not give rise to such a probability.

**L.  Ground Fourteen:  Sentencing Error**

Bruce next says that the Constitution requires that "a jury must find all elements of the offense in order to support a conviction and sentence," and "because there was no finding as to the degree of felony for gross sexual imposition," the "offense would be a fourth or fifth degree felony." [Doc. 18 at 27.]  While Bruce's premise is sound, his conclusion does not follow.  Indeed a jury must find all elements of an offense beyond a reasonable doubt, *see Francis v. Franklin*, 471 U.S. 307 313 (1985), but it does not follow that the degree of felony is an element as opposed to a legal determination.  Indeed, the Ohio Court of Appeals held that under Ohio law, the degree of a felony is legal determination.  *Bruce*, 2011 WL 917003.  Bruce cites no authority to the contrary. Moreover, as the degree of a state law felony is a state law question, it is not cognizable on habeas review.  *See* 28 U.S.C. § 2254(d).  Again, this Court declines to revisit the Ohio Court of Appeals' decision on this point.

**M.  Ground Fifteen:  Sufficiency of the Evidence**

"Petitioner lastly contend[s that] his convictions were not supported by the evidence beyond a reasonable doubt." [Doc. 18 at 28.]  First, he attacks the lack of physical evidence in his rape and gross sexual imposition charges.  Second, he attacks the evidence marshaled in support of the failure.

To succeed on this claim, Petitioner must show, that his conviction "resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented

Case No. 1:10-cv-2894
Gwin, J.

in the State court proceeding." 28 U.S.C. § 2254(d)(2).  And in determining whether the decision was unreasonable, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 324 (2003). Accordingly,"in addressing a sufficiency–of–the–evidence claim we look to 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" O'Hara v. Brigano, 499 F.3d 492, 499 (6th Cir. 2007) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The Court finds the evidence sufficient to sustain Bruce's convictions.  With respect to Bruce's rape and gross sexual imposition convictions, the Sixth Circuit is clear:  "[T]he testimony of a rape victim alone is sufficient to support a defendant's conviction." United States v. Howard, 218 F.3d 556, 565 (6th Cir. 2000).  The same is true on collateral review.  See O'Hara, 499 F.3d at 500.  Petitioner acknowledges that his conviction was "based upon the uncorroborated testimony of [the victims.]"  [Doc. 18 at 28.]  Thus his claim to relief based fails.

Bruce's claim that the evidence presented at trial did not support his conviction for failure to notify of a change of address also fails.  The Court admits some difficulty in understanding Bruce's objections to Magistrate Judge White's Report and Recommendation.  Bruce seems to say that the only evidence that he had changed residences was that he used a post box address in filing an application to Ohio probate court.  [Doc. 18 at 28-29.]  He seems to say that since he was not living at that address, he cannot  be convicted for failure to notify of a change of address.  [Doc. 18 at 28-29.]  But as the Ohio Court of appeals noted, "Detective Soprek stated that in 2007, Bruce registered his address in Cuyahoga County as 10709 Sprague Road, but in an unrelated civil case, he filed and affidavit claiming that his address was 6725 West Central Avenue, Lucas County,

-23-

Case No. 1:10-cv-2894
Gwin, J.

Ohio." *Bruce*, 2009 WL 4170493 at *6.  The Court does not undertake to second guess the jury's decision to credit this testimony.  "[V]iewing the evidence in the light most favorable to the prosecution, [a] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 319).

III. Conclusion

For the foregoing reasons, this Court **ADOPTS** the Report and Recommendation of Magistrate Judge White and **DENIES** Petitioner Bruce's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that no basis exists upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b) .

IT IS SO ORDERED.


Dated: January 15, 2013                         *s/      James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE